JAMES N. WRIGHT, APPELLANT, v. ARTHUR F. HAFFKE, DOING BUSINESS AS WEST LAKE GROCERY STORE, APPELLEE.

196 N. W. 2d 176

Filed April 7, 1972. No. 38150.

Matthews, Kelley, Cannon & Carpenter, for appellant.

Thomas A. Walsh of Boland, Mullin & Walsh, for appellee.

Heard before WHITE, C. J., SPENCER, BOSLAUGH, SMITH, McCOWN, NEWTON, and CLINTON, JJ.

SPENCER, J.

This action involves personal injuries inflicted by a gunshot. The jury returned a verdict for the defendant. Plaintiff perfected this appeal. We affirm.

Plaintiff and an individual later identified as Evans entered the store of the defendant, Arthur F. Haffke, at the same time. Plaintiff was wearing a black jacket and Evans an off-white trench coat. One of them asked, "Where's the milk," and was directed to the northwest corner of the store. When the question was asked they were right next to each other. They both immediately headed to the northwest corner. Defendant did not know either man but assumed they were together. He was suspicious of them and secured a gun he had handy and placed it in his pocket. Defendant watched them in a mirror and saw the men conversing back and forth at the dairy box. The defendant signalled his son Warren, who was at the meat counter, to watch also. The two men came back to the checkout stand together. There is a dispute in the evidence as to which one had a carton of milk. Defendant testified it was Evans; plaintiff insists it was he. One of them set the milk down and asked for cigarettes. Defendant placed the cigarettes on the counter and opened the cash register, then was pushed

on the shoulder and knocked off balance into the cigarette case. He then noticed two hands going into the cash register. One of the hands in the cash register had a light cover, the other a black cover. As defendant turned around, he pulled his gun and fired a shot. The whole incident happened very fast.

As the defendant pulled his gun, the men were turning south toward the door. Plaintiff had moved from 5 to 7 feet from the counter and was about 3 feet from the door. Evans was to the side and slightly behind him. Defendant's first shot hit the plaintiff in the back. A second shot was fired at Evans but missed. Evans slipped and fell after the second shot was fired, but got up and ran rapidly toward the west. The entrance and exit to the store was through two doors, side by side, one opening in, the other opening out. The testimony is that Evans headed for the door opening out; the plaintiff for the door opening in. Defendant did not realize at the time he shot that plaintiff was heading for the door which opened in.

The only currency found inside the building was a bloody $10 bill, which plaintiff testified was his and which was near his hand. Defendant testified that this bill had been pushed behind a broom near some shelving at the entrance to the incoming door, where plaintiff fell. Another $10 bill was found under some broken glass outside the door. The first policeman on the scene testified that plaintiff gave his name as "James Green," and that he saw plaintiff pushing the bloody $10 bill behind the broom previously identified.

Plaintiff sets out nine specific assignments of error, and for his tenth assignment alleges seven errors involving instructions. We discuss only those which we deem merit consideration. Plaintiff's principal assignment of error, his first, pertains to the overruling of his motions for a directed verdict. Plaintiff predicates this assignment on his contentions: (1) That the crime was not his but that of Evans; (2) that he could not escape

because he was headed for the door which would not open from the inside; and (3) that the force used by defendant as a matter of law was unduly excessive to protect or recapture property.

As to plaintiff's contention (1), the following principles of law are applicable: "A jury verdict based upon conflicting evidence will not be set aside unless it is so clearly wrong as to induce the belief on the part of the reviewing court that it must have been found through passion, prejudice, mistake, or some means not apparent in the record." Satterfield v. Watland, 180 Neb. 386, 143 N. W. 2d 124.

"In reviewing the evidence where a jury has returned a verdict for the defendant, the defendant must have the benefit of any and all reasonable inferences deducible from the proof." Vacanti v. Montes, 180 Neb. 232, 142 N. W. 2d 318.

"A common purpose among two or more persons to commit a crime need not be shown by positive evidence but may be inferred from the circumstances surrounding the act and from defendant's conduct subsequent thereto." State v. Walker, 187 Neb. 482, 191 N. W. 2d 817.

The evidence, while conflicting, was ample to permit the jury to determine that plaintiff was a participant in the robbery, and no purpose will be served by further reviewing the 737 pages of the bill of exceptions herein.

We may summarily dispose of plaintiff's contention (2) by the observation that the jury undoubtedly found that a reasonable man in defendant's predicament would have acted as he did. Defendant testified that he did not realize at the time he shot that plaintiff was headed for the door which opened in. The door, however, immediately adjoined the one opening out, and the action occurred so fast that Haffke did not have time to weigh the various possibilities. The jury undoubtedly found the shooting to be an instantaneous reaction to the assault and robbery.

Plaintiff's contention (3) is the crucial question in

this action. Was the situation such that the defendant was privileged to use a gun to protect or recapture his property? On the record, defendant had been assaulted and the perpetration of a robbery was in progress. Money had been taken and defendant's instantaneous reaction was to stop the felons and retain it. Paraphrasing the Restatement rule, use of force is privileged when property is tortiously taken from the owner's possession and it reasonably appears that the felon is about to remove the property from the owner's premises. Restatement, Torts 2d, § 101 (1) (a) and (b), p. 175.

A person may use reasonable force in defense of his property. The issue under consideration is whether the force defendant used exceeded permissible limits and subjected him to civil liability. It is plaintiff's contention that the use of a firearm in view of the circumstances herein constituted the use of unreasonable force as a matter of law. With this we do not agree. We do not believe that a person must docilely submit to robbery and the spiriting away of his property by a felon. To hold otherwise would seriously hamper the right of law-abiding individuals to peacefully enjoy their property; would encourage felons in the pursuit of their nefarious activities; and would make a farce of our criminal law. Ordinarily, a firearm may be used if reasonably necessary to prevent the commission of a felony or to arrest a felon after a felony has been committed. We do not disagree with plaintiff that the law generally places a higher value upon human life than mere rights of property. When a firearm is used, the question always is whether the force used exceeded permissible limits and is a question for the jury under proper instructions.

In the early case of Fosbinder v. Svitak (1884), 16 Neb. 499, 20 N. W. 866, which involved a firearm, this court held: "A person may, with reasonable force, defend his property or premises, as well as his person, when invaded, and the fact that an injury is inflicted

upon the invading or attacking party will not make the resisting party liable for damages resulting from such injury, if inflicted in the reasonable defense of one's house, lands, or goods."

There is a conflict among the various jurisdictions as to whether one may resort to a firearm to prevent a theft of property. See Annotation, 100 A. L. R. 2d 1012. The conflict, however, is in most instances one of degree. For minor thefts the use of a firearm would not be justified, but for more serious felonies, such as robbery, the use may be justified. In this case, the shooting occurred after the participants had committed an assault and while they were attempting to commit a robbery. Defendant owed plaintiff no duty of affirmative care, and had the right to resist the attempted robbery and to use whatever means lay within his power, necessary to that end, even to the extent of using a firearm to retain his property. It was for the jury to determine, however, whether the plaintiff was actually engaged in an attempt to commit a robbery or, if not, whether defendant had reasonable grounds to so believe.

Plaintiff's second assignment of error is that the court erred in overruling his motion for a mistrial. Defendant called the police file clerk to the witness stand. He elicited the fact that she was employed by the Omaha police department; that she had charge of certain records; that she was subpoenaed to bring two of those records with her; and that they referred to two different individuals. The record then continues: "Q. Mrs. Stone, do the records which you have brought with you today indicate the names and the addresses of the individuals to which these records pertain? A. Yes. Q. Do you have with you a record for James — MR. CANNON: Just a moment, I object to any reference to these records at all at this time, Your Honor. THE COURT: Sustained."

Plaintiff's motion for a mistrial is based on his premise that defendant was attempting to show plaintiff had a

police record. Defendant's offer of proof is directed to the fact that he was only attempting to show both plaintiff and Evans at the time in question lived at the same address, and he had no intention of introducing the records in evidence. The trial court sustained the objection to the testimony, overruled the motion for a mistrial, and at the request of the plaintiff gave the following written instruction: "You are instructed to disregard the testimony of Mrs. Ida Stone of the Omaha Police Department, and you are admonished not to draw any inferences or conclusions from the fact that she was called as a witness." Additionally, the court instructed the jury as follows: "You are instructed that this is a civil action for damages only. You are advised that there are no criminal charges pending, either against the plaintiff or the defendant and that no criminal responsibility can possibly flow from your verdict for or against either party hereto, and your deliberations should not be affected in any way by concern that such results might follow. You are to determine and consider only the issues in this case as explained to you in these instructions."

We do not agree with plaintiff that the testimony adduced was obviously prejudicial. The jury knew the police had been called and interviewed the plaintiff. It would also know the police would have some record of the robbery. Even though Mrs. Stone's testimony was withdrawn from the consideration of the jury by a specific instruction, if defendant's counsel had gone no further than to show that the address of both the plaintiff and Evans at the time of the robbery was the same but did not put the files in evidence, there could be no prejudice. The motion for a mistrial was properly overruled.

Plaintiff's third assignment of error relates to the sustaining of 14 different objections on cross-examination that the question does not reflect the evidence. In the only instance where there could be any possible doubt,

the question was rephrased and answered, so there could be no prejudice. Plaintiff's fourth assignment of error referred to other objections falling in the same category. The rulings in each instance were correct or nonprejudicial.

Plaintiff's fifth assignment of error complains of the sustaining of an objection to the reading of a newspaper article to defendant on cross-examination. From his offer of proof we assume plaintiff was attempting to impeach defendant's trial testimony. If so, he had not made a proper record for that purpose. The objection was properly sustained on the record.

The balance of plaintiff's assignments of error are clearly without sufficient merit to warrant a detailed discussion of them. As to the plaintiff's tenth objection involving instructions, the jury was properly instructed relative to plaintiff's theory of the case, as well as the defendant's. Instructions to the jury must be considered as a whole, and when thus considered, if the law is correctly stated and the case fairly submitted, and the jury could not have been misled, a claim of prejudicial error in the instructions is not available. Beranek v. Petracek, 184 Neb. 516, 169 N. W. 2d 275.

Considered in the light of the above rule, plaintiff's seven specific assignments of error as to instructions are without merit.

For the reasons given, the judgment is affirmed.

AFFIRMED.