Paul S. PIETROWSKI and Nana R. Pietrowski, Plaintiffs-Appellants-Respondents,

v.

William MYKINS, Administrator of the Estate of Eben Parrish, Deceased, Defendant-Respondent-Appellant.

No. 34836.

Missouri Court of Appeals, St. Louis District, Division Two.

June 26, 1973.

Motion for Rehearing or Modification Denied Aug. 16, 1973.

Deeba, DeStefano, Sauter & Herd, James B. Herd, St. Louis, for plaintiffs-appellants-respondents.

Heege & Heege, George F. Heege, III, Clayton, for defendant-respondent-appellant.

KELLY, Judge.

This is an appeal by Paul S. Pietrowski and Nana R. Pietrowski, husband and wife, from a judgment of the Circuit Court of the City of St. Louis, wherein Mr. Pietrowski was awarded $3,000.00 on Count I of their petition and the respondent prevailed on Mrs. Pietrowski's suit for loss of consortium on Count II of their petition. Both plaintiffs have appealed. The respondent also appeals from the judgment entered by the trial court after it denied respondent's motion to set aside the second jury verdict and reinstate the first jury verdict of May 18, 1971.

The litigation grew out of a rear-end collision which occurred at approximately 3:00 p. m., Friday, March 31, 1968, near the intersection of Magnolia Avenue and Kingshighway Boulevard in the City of St. Louis, Missouri. Mr. Pietrowski, an electrician in the employ of the Hampton Electric Company, had just completed a job assigned to him and was sitting in the company owned truck behind a line of traffic facing westwardly on Magnolia Avenue, waiting to make a left turn at Kingshighway Boulevard when Mr. Parrish, operating his Chevrolet Sport Van westwardly along Magnolia Avenue, collided with the rear end of the truck in which Mr. Pietrowski was seated, driving said truck forward and into the rear end of an automobile stopped directly in front thereof. The liability issue was not seriously contested by respondent and for that reason the factual aspects of the collision need not be further developed. However, respondent contested the appellants' claims on the issue of whether or not the injuries complained of by Mr. Pietrowski were a direct consequence of this incident and whether or not Mr. Pietrowski was credible.

The injuries Mr. Pietrowski alleged he received in the accident first became noticeable the Sunday following the accident, although he testified that he was nervous at the scene immediately following the collision. He complained that he sustained injury to his right elbow, his left knee, upper back, low back and both shoulders and when he reported to work the following Monday he was sent to Dr. Weinburg, the "company doctor." He remained under Dr. Weinburg's care for approximately 3 months and then he was referred by Dr. Weinburg to Dr. Costain, another "company doctor," who treated him for a period of 4 months. Because of the persistence of the pain in his left knee his attorney referred him to Dr. Jerome Gilden, an orthopedic specialist, and by the time of trial he had seen Dr. Gilden a total of 8 times. His complaints at trial were constant pain in the low back, "of the dull variety," weakness of the left leg, and sharp left knee pain. He testified that both as a result of his injuries and time lost making visits to doctors' offices and physical therapy treatments at Alexian Brothers Hospital he lost 200 hours pay at the basic scale of $5.50 per hour which he was receiving at the time of the accident. Neither Dr. Weinburg—who had died prior to the trial—nor Dr. Costain were called as witnesses; however, Dr. Gilden testified that his original diagnosis was "residuals of soft tissue injury of the sprain (sic) in the dorsal area of the back," which was later altered to "soft tissue injury superimposed on a

pre-existing curvature of the spine or pre-existing scoliosis." He diagnosed the condition of the left knee as "synovitis" and was of the opinion that this was a permanent injury.

At the respondent's request Mr. Pietrowski was examined by Dr. Newton White, an orthopedic specialist. Dr. White was called by appellants as their witness. He testified that after his single examination of Mr. Pietrowski his diagnosis was: (1) cervical sprain, (2) lumbo-sacral sprain, (3) a torn medial meniscus of the left knee, and (4) a slight tear of the medial collateral ligament.

Both Drs. Gilden and White were of the opinion that these injuries were caused by the accident.

For the purposes of simplicity we shall hereinafter in this opinion refer to the plaintiffs in the trial court as the appellants and the defendant, as respondent.

Appellants offered no evidence of the cost of medical treatment, therapy at Alexian Brothers Hospital, or other incidental expenses in connection therewith.

On appeal appellants present the following points for review:

1. The trial court erred by permitting respondent's counsel to interrogate Dr. Gilden on cross-examination regarding the contents of a medical report of Dr. Weinburg over objection that it was hearsay.

2. The trial court erred in reading to the jury instructions numbers 3 and 5 because they were in conflict with appellants' instructions numbers 2 and 4—their verdict directors—because appellants' instructions referred to the negligence of Eben Parrish, the deceased, whereas instructions 3 and 5, which conversed instructions 2 and 4 respectively, told the jury that their verdict must be for the defendant unless they believed "that Defendant was negligent;" the defendant is the administrator of the estate and could not have been guilty of any negligence whatsoever.

3. The trial court erred in resubmitting Mrs. Pietrowski's claim—Count II—to the jury after the jury had returned into the court a verdict on both Count I and Count II because by refusing to accept the verdict on Count I which found the issues in favor of Mr. Pietrowski but awarded him no damages, and then explaining to the jurors that the verdict was not in proper form the trial court inferentially advised the jury that the verdict it had simultaneously returned on Count II was, in the court's opinion, a proper verdict.

With respect to appellants' first point, respondent's counsel, on cross-examination, asked Dr. Gilden if he might inspect the doctor's file, which the doctor had with him on the witness stand and to which he had referred in answering questions propounded to him by appellants' counsel. The file was handed to him, he inspected it for a short time, and after establishing that Dr. Gilden's file contained copies of medical reports of each of the other doctors who had examined Mr. Pietrowski, he further developed that these had been sent to Dr. Gilden by appellants' counsel sometime prior to trial. Respondent's counsel then directed Dr. Gilden's attention to what he identified as a "copy of a standard form, surgeon's report from Dr. Weinburg dated 10–30–68" in Dr. Gilden's file and asked: "Doctor, on this report from Dr. Weinburg does it have on there no time lost, is that right on there?" Objection was interposed by appellants' counsel that this was hearsay. A dialogue between counsel ensued and the Court then ruled:

"It's been proven they are unavailable by a lady so in view of the unavailability of the records, I'll permit him to interrogate with reference to this record providing it is signed by Dr. Weinburg."

Respondent's counsel then inquired of Dr. Gilden: "Is there a signature on that

thing?" Dr. Gilden's response was: "Yes." Counsel then asked: "Does it show an entry of no lost time?" Appellants' counsel renewed his objection, but the court said: "Yes. Your objection goes to the whole line. Let's proceed." It was then elicited from the witness that in two spaces on the form, first "date disability began" and secondly at Item 20 "patient was able to resume regular work," the entry "no lost time" appeared.

Appellants take the position that this evidence was admitted in violation of the hearsay rule and that it was prejudicial in that it tended to negate Mr. Pietrowski's testimony with respect to his work loss and directly affected the issue of his credibility and veracity.

Respondent does not deny the hearsay nature of the testimony but contends that the entries read by Dr. Gilden from the "surgeon's report" were properly admitted because:

1) Dr. Weinburg is deceased;

2) He was the treating physician;

3) His original records are unavailable;

4) His records were not incorporated in the hospital records of Alexian Brothers Hospital;

5) He was the "company doctor" and since Mr. Pietrowski had admitted that he had filed a claim against his employer under the Workmen's Compensation Laws the doctor was required by law to furnish a report to the Division of Workmen's Compensation in the regular course of his business as the "company doctor" and said report was admissible before the Commission;

6) Counsel for Mr. Pietrowski had obtained this surgeon's report and then forwarded it to Dr. Gilden on Mr. Pietrowski's behalf; and

7) Failure to permit full interrogation by the use of a medical record made in the regular course of business of a treating physician which is in the possession and control of plaintiffs' counsel would allow a concealment of evidence where the deceased physician's records are otherwise unavailable.

■ It is so fundamental that this "surgeon's report" constituted hearsay that we need not cite legal authorities to that effect. Nor does the fact that it is contained within Dr. Gilden's files make it any the less so. Whitehead v. Martin, 446 S.W.2d 505, 507[2] (Mo.App.1969). Unfortunately this "surgeon's report form" was neither marked as an exhibit nor offered and received in evidence; it is not, as such, before this court. Nor is there any evidence that it was a "certified copy" of the "record of a person furnishing the employee with medical aid" so as to be admissible in any proceedings before the Division of Workmen's Compensation as required by § 287.140(6) RSMo 1969, V.A. M.S. No one, as the trial court required in its ruling, established that the form contained the bona fide signature of Dr. Weinburg. Although the custodian of the hospital records testified that she knew Dr. Weinburg during his lifetime, she was not asked if she could identify his signature.

■ No effort was made to lay a foundation for the admissibility of this form under the Uniform Business Records Act, § 490.680 RSMo 1969, V.A.M.S., and therefore the evidence was not admissible under that exception to the hearsay rule.

■ Nor are we satisfied that this report was not available to respondent upon a proper use of process. If, as he contends, the original of this report was filed with the Division of Workmen's Compensation then it would be available to him by subpoena. He has made absolutely no showing that he has made any effort to determine who has the custody of Dr. Weinburg's records nor if they are still in existence. How much effort was made by the employees or officers of Alexian Brothers Hospital to locate Dr. Weinburg's records was not shown, and in our opinion, that,

standing alone, would not be sufficient to by-pass the rule of evidence under consideration.

■ Respondent's counsel during his cross-examination of Mr. Pietrowski inquired: "Didn't you tell Dr. Weinburg when you were first examined by him you didn't lose any time from work?" The witness denied this. This would seem to belie the contention here that Dr. Weinburg's record was unavailable; otherwise, since this occurred prior to Dr. Gilden's testimony relative to Dr. Weinburg's surgeon's report, from whom did counsel obtain the information upon which to found his query? Nor is this portion of the report admissible as an exception to the hearsay rule as an admission against interest, for the record does not show that the surgeon's report entries of "no time lost" was based upon statements made to the deceased doctor by Mr. Pietrowski. Such information might well have been furnished by someone else and would therefore be hearsay based upon hearsay.

■ We rule that the trial court erred in permitting this interrogation of Dr. Gilden relative to the surgeon's report. However, as this Court held in Whitehead, supra, 446 S.W.2d l. c. 507: "To warrant reversal two elements must appear. The ruling must be erroneous, and the error must be prejudicial." Having already determined that the reading of portions from the surgeon's report was error, we must now determine whether it was prejudicial. From the facts and circumstances of this case we conclude that it was.

Not only does this evidence strike at Mr. Pietrowski's claim for lost time, but it is also a direct attack on his credibility and the weight to be given to his testimony. Throughout the course of trial his credibility, properly so, was in issue. The record demonstrates that after respondent's counsel inquired relative to whether Mr. Pietrowski had told Dr. Weinburg that he had lost no time from work, his cross-examination of Dr. Gilden, once he got into evi-

dence the entries on the surgeon's report form that there was no lost time, he was immediately directed to whether it was a part of the doctor's job in examining and evaluating his patient to take into consideration the credibility or believability of his patient, and "If a man lies to you or does not tell you the truth, that tends to throw some doubt on what he says and what responses he gives to you whether he has pain or not have pain, is that correct?" And in argument, respondent's counsel in arguing credibility said:

"I want you to remember that he told the doctor and the doctor's notes show this that he said he did not lose any time from work and now we are confronted with two hundred hours of lost time. This is on Doctor Costain's (sic) notes even when Mr. Herd told him to keep track of, very diligently, the time and he goes to Dr. Costain (sic) who has no record of lost time. Dr. Costain (sic) is not here to testify."

Dr. Costain did not testify nor was there any evidence of what his notes contained with respect to lost time. While no objection was made to this argument, we cite it only to demonstrate that here respondent not only had the benefit of improperly admitted evidence, but also of argument unsupported by any evidence whatsoever attacking the credibility of Mr. Pietrowski on the same point.

While in Whitehead, supra, this court found that error of this nature did not constitute prejudicial error because in that case the jury returned a verdict for the defendant and the letter erroneously admitted into evidence covered matters contained in the deposition testimony of the same doctor which was read to the jury in lieu of his appearance in person. In the present case there is no evidence to contradict Mr. Pietrowski's testimony in respect to lost time other than those notations in the surgeon's report of the deceased physician.

We do not rule on appellants' second point for review because we are of the

opinion that the error complained of was a typographical error which will not recur on a retrial.

One common ground presented by both the appellants and the respondent is that the trial court erred in resubmitting the case to the jury after it had returned its first verdict into court. Appellants' complaint is that by refusing to receive the verdict on Count I and then orally informing the jury of its reasons why it could not accept the verdict in that form, it inferentially put its stamp of approval on the jury verdict on Count II denying Mrs. Pietrowski any recovery for loss of consortium. Respondent, on the other hand bases his complaint on the court's refusal to accept the verdict as originally returned, which, he contends, was a verdict in proper form as to both counts, and would have us reinstate that verdict and enter judgment in accordance therewith.

Prior to reading the instructions to the jury and while counsel and the court were engaged in a discussion at the bench out of the hearing of the jurors relative to the two exhibits constituting the respondent's evidence, the court advised the attorneys that he had the verdict forms which he was going to use in the case and that he wanted them to take a look at them. Appellants' counsel, after examining the verdict forms, remarked that he objected to the form which permitted the jury to find in favor of Mr. Pietrowski on his claim and against Mrs. Pietrowski on her claim for loss of consortium. The reason for this objection was that the court also had a verdict form which allowed the jury to find against both Mr. and Mrs. Pietrowski on their respective claims. The court explained that he ordinarily gave the following forms of verdict in a case of this kind; one to be used in the event the jury finds in favor of the husband and the wife; one to be used in the event the jury finds in favor of the husband and against the defendant; one to be used in the event the jury finds in favor of the wife and against the defendant; and one to be used in the

event the jury finds in favor of the defendant on both counts. After some further discussion relative to the verdict forms both counsel stated they had no objections to their use.

The Instructions were read to the jury and counsel commenced their arguments. Respondent's counsel in his argument said:

> "Now, you could very easily find that Mr. Parrish was at fault for the accident but that these people are not entitled to any money because they were not damaged. *And you could bring in an award in favor of the plaintiffs and no dollars. Think about that. The instructions tell you that.* I am not contesting the liability of what happened out there. Certainly an accident occurred. We know it did."

At the time the case was submitted to the jury the three verdict forms were given to the foreman and taken to the jury room along with the instructions. After some deliberation the jury advised the court that it had reached a verdict. When the verdict was handed to the judge he examined it and then called both attorneys to the bench. The verdict read as follows:

> "We, the jury in the above entitled cause, find the issues herein joined on the First count of the petition in favor of plaintiff Paul S. Pietrowski and against the defendant and we assess said plaintiff's damages at the sum of $0.
>
> We further find in favor of the defendant and against plaintiff Nana R. Pietrowski on the Second count of the petition."

The verdict form bore the signatures of nine of the jurors.

The court advised counsel that he did not understand the verdict and that he was therefore going to tell the jurors that the verdict could "hardly be a finding in favor of Paul" if they mark it zero. Some discussion followed as to the validity of the verdict in that form and appellants' counsel

requested a mistrial. His motion was overruled. The court then addressed the jury as follows:

"Members of the jury, the court will be unable to accept this verdict because—well—and the court is going to send you back to deliberate and will give you a blank piece of paper and ask you to write out your verdict, if you would. Thank you very much."

The court took the position that the verdict was invalid because a verdict for the defendant was the proper verdict if the jury concluded that although Mr. Parrish was negligent and caused the collision, Mr. Pietrowski had sustained no damage as the direct result thereof.

The jury was returned to the jury room to continue its deliberations, but this time the court took from their possession the three verdict forms prepared by the clerk and instead sent with them a blank piece of paper on which he had instructed them to write out their verdict. Appellants' counsel renewed his objection to the court's action in resubmitting the matter to the jury a second time with a blank piece of paper and without instructing the jury in accordance with M. A. I. and moved for a mistrial. His motion was again overruled. The court then had the jury returned to the court room and after retrieving the instructions and the blank piece of paper he had furnished them on which to write their verdict in long hand, excused them for the night with directions to return the following morning at 9:30 a.m. He further orally instructed them as follows: "The court has taken the position you have not arrived at a verdict that the court can accept under the evidence and the instructions as to form at least and therefore you will be excused until tomorrow morning at 9:30 a.m. and at that time the court will give you another instruction with reference to the matter." He then instructed them not to discuss the case with anyone and to put the case out of their minds until they returned the following day.

The next morning the court addressed the jury as follows:

"Members of the jury, *the court could not receive the verdict for the reason that it is contradictory with reference to the claim of Paul Pietrowski against the defendant* and before the verdict can be received you are required to correct it. Please study the court's instructions. The court is further withdrawing Instruction Number Eleven and gives you another Instruction which the court will mark Number Twelve."

The court then read Instruction Number Twelve, an M.A.I. 36.07 verdicts form instruction. When the court finished, appellants' counsel approached the bench and, out of the hearing of the jury, advised the court that by proceeding in this manner the court was implying to the jury that the verdict as to Mrs. Pietrowski on Count II was proper and he was therefore objecting to the case being resubmitted accompanied by the oral instruction and requested a mistrial. The court overruled the request for a mistrial, delivered the instructions and the blank piece of paper to the sheriff who then returned the jury to the jury room to continue its deliberations.

Subsequently, after further deliberations, the jury returned a verdict in the following form:

"We, the undersign (sic) find the issues in favor of the plaintiff Paul S. Pietrowski upon Count I of the petition and assess his damages at $3,000.00."

The signatures of nine of the jurors appeared immediately after the handwritten verdict on Count I, and then the following:

"We, the jury, find the issues in favor of the defendant and against the plaintiff Nana R. Pietrowski upon Count II of the petition."

This verdict form was signed by the foreman of the jury alone.

Appellants and respondent have both preserved their points for review and have

briefed them in this court. Both cite authorities which they contend support their position with relation to the two verdicts returned by the jury. The appellants' emphasis is directed against the inferences they contend were expressed to the jury in the court's oral instructions whereas the respondent argues that the verdict in its original form constituted a valid verdict and should have been accepted and received by the trial court.

■■ Does a verdict making a finding for the plaintiff but awarding plaintiff no damages constitute a valid verdict? If the answer is affirmative, then the trial court erred in refusing to accept the first verdict returned by the jury since that verdict would have disposed of both counts of the petition adverse to the appellants. As we view the law, in a case of this nature, before a jury can return a verdict in favor of the plaintiff it must find first, that the defendant is negligent *AND* secondly that the plaintiff sustained some damage as a direct result of the defendant's negligence. This the jury was told in both Instruction Number Two—the verdict director on Count I of the petition—and Instruction Number Four—the verdict director on Count II of the petition. Each Instruction requires a verdict for the plaintiff upon a finding first of negligence on the part of Mr. Parrish and damage "as a direct result of such negligence." The converse instructions submitted by the respondent, Instructions Numbers Three and Five, were M.A.I. 33.04(4) mod. Instructions, and both advised the jury that unless the defendant was shown to be negligent *and* the respective plaintiff sustained damages as a direct result thereof, they must return a verdict for the defendant.[1] Counsel for the respondent was permitted to argue to the jury, without objection, that the jury could bring in an award in favor of the plaintiffs without any dollar award even if the jury found that Mr. Parrish was at fault for the accident "but that these people are not entitled to any money because they were not damaged."

■ A situation similar to this one under review occurred in Boone v. Richardson, 388 S.W.2d 68 (Mo.App.1965), a case where the plaintiff sought damages against the defendant for personal injuries. There too the jury found for the plaintiff and against the defendant but assessed plaintiff's damages at zero dollars. The Springfield District of this court correctly, we think, held that the verdict, on its face, was so contradictory as to constitute a nullity. There is no actionable negligence in the absence of injury resulting directly therefrom. This court recently distinguished Haley v. Byers Transp. Co., 394 S.W.2d 412 (Mo.1965), relied on by respondent, in Stroud v. Govreau, 495 S.W.2d 682 (Mo.App. St.L.Dist. filed 5–15–1973). In Haley the Supreme Court decided that when a verdict in the form we have in this case is returned there is a split of authority as to its validity. One line of authority holds that it is in effect a verdict for the defendant whereas an equally distinguished line of authority holds, with Boone v. Richardson, supra, that there is no verdict. In Haley, the jury was instructed that they could credit against or deduct from plaintiff's total damages as determined by them, the sum of $80,000.00 which the plaintiff had already been paid by another party to the same auto collision. The Court specifically stated, 394 S.W.2d 1. c. 416, with respect to this form of verdict: "This court has never ruled on that precise question and is not called upon to do so in this case, for the factual situations are not the same. In the Boone case there had been no payment of any kind to plaintiff by any actual

---

1. Although the point is not before us on this appeal, attention is invited to Murphy v. Land, 420 S.W.2d 505 (Mo.1967) wherein it was held M.A.I. No. 33.04 (formerly M.A.I. 29.04) authorizing multiple converse instructions refers and applies only to the conversing of submissions of multiple theories of recovery, and it had no application to the situation in which the court submitted the same theory of recovery in behalf of different parties plaintiff.

or prospective defendant which would apply against whatever damages were suffered."

Patison v. Campbell, 337 S.W.2d 72 (Mo.1960), a wrongful death claim brought by an administrator, where awarding him "No Dollars" was allowed to stand, is not controlling here. That case merely held that the assignment of error in relation to the form of verdict failed to state any reason for its conclusion; and, that after an examination of the instructions, a literal compliance with those given at appellant's request could result in the verdict rendered. This was because by Instruction Number 1 the jury could have found liability and under Instruction Number 12 it could have found no pecuniary injury. The Court, 1. c. 76 said: "In this, Instruction No. 1 differs from the usual personal injury suit verdict-directing instruction that not only requires therein a finding of liability but also a finding of injury of plaintiff, . . ."

■ Having ruled that the trial court was correct in refusing to accept the verdict in its original form, we then move on to consider whether, since the jury subsequently also found for the respondent and against Mrs. Pietrowski on Count II of their petition she too should be awarded a new trial. We hold that she is entitled to a new trial because when a suit is brought by one spouse for injuries sustained as a direct result of the negligence of another and the other spouse also seeks damages for her loss of consortium, a verdict in favor of the spouse who actually suffered and sustained the personal injuries but against the other spouse on her derivative suit for loss of consortium is inconsistent and, where there is substantial evidence to support her claim for loss of consortium, must be set aside. Stroud v. Govreau, supra; Foster v. Rosetta, 443 S.W.2d 183

(Mo.1969); Manley v. Horton, 414 S.W.2d 254 (Mo.1967).

The jury by its verdict in Count I of the plaintiff's petition found that the respondent was negligent and his negligence directly caused the damages sustained by Mr. Pietrowski. Thus, the jury necessarily had to find the liability aspect of the case in favor of Mrs. Pietrowski and was then left only to decide what damages, if any, she was entitled to for loss of consortium. The undisputed evidence was that Mrs. Pietrowski had been the wife of Mr. Pietrowski for a period of 24 years and that prior to the accident of March 31, 1968, they lived a normal social life, went out to dinners and parties and on many occasions danced. Since the date of the accident Mr. Pietrowski has been irritable, no longer takes her out to places of amusement nor dances with her. Since the accident she has used a heat massager three to four times weekly to relieve pain in Mr. Pietrowski's back and leg.

By the very nature of her claim, Mrs. Pietrowski's case hinges on the credibility of her spouse. We have previously held that the trial court erred in admitting into evidence the surgeon's report form which directly attacked the credibility of Mr. Pietrowski not only relative to the "lost time" claim but also as to the weight to be given to his testimony. We cannot finely measure the effect of this incompetent evidence with respect to Mrs. Pietrowski's claim but having determined that it was prejudicial with respect to her husband's claim we also conclude that it was prejudicial to her claim.

Liability was never an issue in this case at the trial level and since we must reverse and remand we do so on the issue of damages only as to both Counts I and II.

SMITH, P. J., and SIMEONE, J., concur.