C I T Financial Services of Kansas, a corporation, formerly known as Universal C.I.T. Credit Corporation, a corporation, appellant, v. The Egging Co., a corporation, appellee.

253 N. W. 2d 840

Filed May 18, 1977. No. 40917.

George A. Sommer, for appellant.

Thomas Dorwart of Peetz, Dorwart, Peetz & Weinpel, for appellee.

Heard before White, C. J., Spencer, Boslaugh, McCown, Clinton, Brodkey, and White, J.J.

White, C. J.

The plaintiff, C I T Financial Services of Kansas, brought this action to recover money under an alleged lease purchase agreement between plaintiff and defendant involving a Royal Bond copier. The plaintiff sought damages in the sum of $11,593.68, plus attorney's fees and costs.

The defendant denied that it had entered into the lease purchase agreement which was the subject of the plaintiff's claim and filed a counterclaim to re-

cover payments made to the plaintiff, attorney's fees, and costs. In reply to the defendant's counterclaim, the plaintiff alleged that Richard D. Flowers was the agent of the defendant and that he acted within the scope of his authority when he entered into the lease purchase agreement on behalf of the defendant, and that, in any event, the defendant ratified the act of Richard D. Flowers in entering into the lease purchase agreement.

Prior to trial, both parties filed motions for summary judgment which were overruled. The case proceeded to a jury trial. At the close of the plaintiff's evidence, the defendant moved for a directed verdict which was overruled. At the close of the evidence, the defendant moved for a directed verdict or in the alternative to dismiss, and the plaintiff moved for a directed verdict. Both these motions were overruled. The matter was submitted to the jury, which returned a verdict for the defendant. The plaintiff filed a motion for a judgment notwithstanding the verdict or in the alternative for a new trial, which was overruled, and now appeals. We affirm the judgment of the District Court.

On appeal the plaintiff raises two contentions. First, that there was insufficient evidence to support a jury finding in favor of the defendant; and, second, that there was error in the instructions.

Our review of the plaintiff's first contention is governed by the following rules. "In testing the sufficiency of the evidence to support a verdict, it must be considered in the light most favorable to the successful party and every controverted fact must be resolved in his favor and he should have the benefit of every inference that can be reasonably drawn therefrom." Schmidt v. Knox, 191 Neb. 302, 215 N. W. 2d 77 (1974). A verdict by a jury based upon conflicting evidence will not be set aside on appeal unless it is clearly wrong. Grady v. Denbeck, 197 Neb. 795, 251 N. W. 2d 164 (1977).

The defendant is a manufacturing business located near Gurley, Nebraska. Prior to May 1974, the company used a Xerox brand copier. Ted Egging was president of the company prior to August 1974. Thereafter he was vice president and chairman of the board. On April 2, 1974, Ted Egging hired Richard D. Flowers, who was under his supervision while Flowers was with the defendant. About 2 weeks after Flowers' arrival at the company, Flowers had a conversation with Ted Egging concerning obtaining a Royal Bond copier. Flowers stated that they could save $100 per month with the Royal Bond copier and that it made better copies. John Egging, Ted Egging's brother, who was vice president of the company prior to August 1974 and president of the company after August 1974, stated that, "We gave him the okay to go ahead and pursue discussions with the people regarding the Royal Bond machine." Ted Egging testified that he told Flowers "to check into it and get me some details."

In April or May 1974, a Royal Bond copier was delivered to the defendant's office. The Xerox machine previously used by the defendant had been rented. John Egging testified that the payments made for the Royal Bond machine were on the basis of rent. Ted Egging stated that Flowers told him that it was just a straight rental situation. The first invoice for the machine indicated that it was "1st month rent in advance for RBC copier." John Egging stated that he assumed the proper procedures had been followed and that he did not go check with the purchasing department.

The Royal Bond copier was in use for 4 or 5 months. Supplies for the machine were purchased and monthly checks of $207.03 sent in payment for the machine.

After the defendant had some service problems with the machine, John Egging searched for a service agreement and discovered a purchase order

signed by Richard D. Flowers, as purchasing agent. John Egging testified that "Richard D. Flowers was never purchasing agent, was not authorized to sign purchase orders, never had been and never would have been, because of his position with the company." He testified that the defendant does not issue purchase orders for rental equipment, and that its policy is that it does not purchase equipment of this type.

John Egging testified that use of the machine was terminated because Flowers had done all the negotiations concerning the machine and had not followed company policy or procedure. On September 3, 1974, John Egging voided the purchase order for the reason that the signature was invalid or unauthorized, and, after failing to find a service agreement or contract, ordered rental payments stopped. On September 20, 1974, the purchasing department entered into a new agreement for the use of a Xerox machine. On September 24, 1974, the defendant's attorney wrote the plaintiff a letter advising it that the purchase order and the lease purchase agreement were being terminated and requesting that the machine be removed from the premises.

The above evidence, if believed, was sufficient to support the jury's verdict in favor of the defendant.

The plaintiff next finds error with the instructions. The plaintiff contends that the District Court erred in failing to give the plaintiff's requested instructions Nos. 4, 8, and 11, and in giving its instruction No. 11.

This assignment of error centered around the court's submission of the issue of ratification by the defendant. Plaintiff's requested instructions are predicated, as it says, upon the proposition that there was ample evidence to submit the issue to the jury as to whether the defendant should have been put on inquiry upon which it could have obtained full knowledge of the existence of the contract to pur-

chase. It contends that instruction No. 11 on the ratification issue required the defendant to have actual knowledge of this fact before it could have been held to ratify Flowers' act in signing the lease agreement. It contends that the instructions should have contained the phrase, "or was put on inquiry from which knowledge could have been obtained."

The trouble with this argument is that the evidence is conclusive the defendant had *no knowledge* even of the existence of the purported agreement until long after the payments were stopped and the use of the Royal Bond copier was discontinued. There was nothing for the defendant to inquire into. The evidence in the record is that John Egging, immediately upon hearing of the unauthorized acts of Flowers, repudiated them. This evidence, of course, negatives any issue of the defendant failing to act after it was put on inquiry as to any unauthorized acts of Flowers. In Rodine v. Iowa Home Mut. Cas. Co., 171 Neb. 263, 106 N. W. 2d 391 (1960), it is stated: "It is an essential requirement of a valid and effective ratification of an unauthorized act by the principal that he have *complete* knowledge of the unauthorized act and of all matters related to it." (Emphasis supplied.)

John Egging's conduct was in strict conformity with our pronouncement in Citizens Savings Trust Co. v. Independent Lumber Co., 104 Neb. 631, 178 N. W. 270 (1920), which holds that it is the duty of a corporation when it learns of an unauthorized act committed in its name, or one who desires to repudiate it, to disaffirm the transaction and refuse to be bound by it within a reasonable time. Summarizing, the defendant company could not have ratified the unauthorized acts of Flowers unless it had some knowledge of the subject matter. Rodine v. Iowa Home Mut. Cas. Co., *supra;* Le Bron Electrical Works, Inc. v. Livingston, 130 Neb. 733, 266 N. W. 589 (1936); American Nat. Bank v. Bartlett, 40 F. 2d 21

(1930); Drainage Dist. v. Dawson County Irr. Co., 140 Neb. 866, 2 N. W. 2d 321 (1942).

Instructions to the jury should be considered as a whole and if they fairly submit the case, they are not erroneous. Hadenfeldt v. State Farm Mut. Auto Ins. Co., 195 Neb. 578, 239 N. W. 2d 499 (1976). It is the duty of the trial court to submit to the jury all issues properly pleaded and which find support in the evidence. Fleischer v. Rosentrater, 190 Neb. 219, 207 N. W. 2d 372 (1973). Instructions to the jury are to be considered as a whole. When thus considered, if the law is correctly stated, the case fairly submitted, and the jury could not have been misled, the claim of prejudicial error in the instructions is not available. Wright v. Haffke, 188 Neb. 270, 196 N. W. 2d 176 (1972).

We have carefully examined the instructions given. When construed together they correctly state the law, and fairly submit the issues to the jury. That being the case, there was no prejudicial error by the District Court in giving any of the instructions that it did, or in refusing to give the plaintiff's requested instructions.

The judgment of the District Court is correct and is affirmed.

AFFIRMED.