MILO P. VACANTI, APPELLANT, V. MASTER ELECTRONICS CORPORATION, A NEBRASKA CORPORATION, APPELLEE.

514 N.W.2d 319

Filed April 8, 1994.   No. S-92-650.

Frank Meares for appellant.

Dean F. Suing, of Katskee, Henatsch & Suing, for appellee.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, and FAHRNBRUCH, JJ., and GRANT, J., Retired.

WHITE, J.

Milo P. Vacanti brought a civil assault and battery action against Master Electronics Corporation based on the conduct of Master's employees. The jury returned its verdict in favor of Vacanti, but awarded him less than his claimed damages. Vacanti appealed to the Nebraska Court of Appeals. Under the authority granted by Neb. Rev. Stat. § 24-1106(3) (Cum. Supp. 1992) to regulate the caseload of this court and the Court of Appeals, we removed the matter to this court. We affirm.

The basic facts underlying this action are not in dispute. In April 1989, Vacanti's wife delivered a compact disc (CD) player to Master's place of business for repair. Seven months later, on November 21, 1989, Vacanti went to Master's place of business to pick up the CD player. Vacanti believed that the repairs would be covered by warranty. Vacanti was told by a Master employee, Arthur William Hull, that the CD player had been repaired but that Vacanti would be responsible for the bill. Vacanti grabbed the CD player and attempted to leave Master's place of business. Hull and at least one other Master employee, Robert A. Dolezal, attempted to stop Vacanti and succeeded in taking the CD player from him.

Vacanti then brought the present action, claiming that as a result of being "attacked" by Master employees, Vacanti had suffered a "torn" hand, a "muscle separation on a rib," torn

ligaments, and injury to his "neck musculature and lip." At trial Vacanti presented evidence of medical bills totaling $3,150. The jury returned a verdict in favor of Vacanti for $1,795.07. Vacanti timely filed a motion for new trial, which was overruled. Vacanti then perfected this appeal.

Vacanti asserts that (1) the trial court erred in giving certain jury instructions, (2) the trial court erred in refusing to admit a medical report into evidence, and (3) the verdict is the result of mistake and is inadequate. We address each of these assigned errors in turn.

Vacanti first asserts that the trial court erred in giving jury instructions Nos. 2, 6, and 9.

Jury instruction No. 2 explains the allegations of the parties. It states, in relevant part:

> Defendant generally denies Plaintiff's claim, and asserts that: Plaintiff made inquiry of Defendant concerning repairs to a CD player; that Plaintiff became abusive and attempted to take his CD player without paying for the repairs; that Defendant's employees tried to stop Plaintiff from removing the CD player without paying for these repairs; and that Plaintiff aggravated or provoked this incident.

Jury instruction No. 6 explains the elements of Plaintiff's prima facie case:

> Before the Plaintiff can recover from the Defendant, the burden is upon the Plaintiff to establish by a preponderance of the evidence each of the following propositions:
>
> 1. That on or about the date alleged in the Petition an individual or individuals unlawfully and without just cause assaulted the Plaintiff, causing him personal injuries;
>
> 2. The nature and extent of such injuries;
>
> 3. The amount of Plaintiff's damages; and
>
> 4. That at the time of these events the individual or individuals were acting as Defendant's agents, within the scope and course of their employment by the Defendant
>
> . . . .

Jury instruction No. 9 explains that Master had an artisan's

lien on the CD player and therefore had a right to retain the CD player:

> Nebraska Statutes provide that when any person, firm or corporation who repairs or in anyway [sic] enhances the value of any equipment such as the CD unit involved in this case, at the request of or with the consent of the owner, or owners thereof shall have a lien on such equipment while in his possession, for his reasonable or agreed charges for the work done or material furnished, and shall have the right to retain such property until such charges are paid.

> You are instructed that on November 21, 1989, the Defendant Master Electronics Corporation had a lien on the subject CD unit to the extent of its reasonable or agreed charges for the work done and was entitled to retain possession of the CD unit until such charges were paid.

At the instruction conference, Vacanti objected to each of these three instructions.

The questioned jury instructions all relate to Master's theory of the case: defense of property. Under a defense-of-property defense, the use of force is privileged when an invader takes property from another's possession and it appears that the invader is about to remove the property from the possessor's premises. See *Wright v. Haffke*, 188 Neb. 270, 196 N.W.2d 176 (1972). The privilege allows only for the use of reasonable force. *Id.* The privilege may be exercised by anyone in possession of property who has, as against the invader, a superior right to the property. W. Page Keeton et al., Prosser & Keeton on the Law of Torts § 21 (5th ed. 1984).

Vacanti argues that Master was not entitled to a defense-of-property instruction. Vacanti also argues that even if Master had been entitled to such an instruction, the instruction given by the trial court did not properly explain defense of property to the jury. Vacanti concludes that the instructions constitute reversible error. We disagree.

In an appeal based on the claim of an erroneous instruction, the appellant has the burden to show that the questioned instruction was prejudicial or otherwise adversely affected a

substantial right of the appellant. *Pugh v. Great Plains Ins. Co.*, 239 Neb. 171, 474 N.W.2d 677 (1991); *State v. Harney*, 237 Neb. 512, 466 N.W.2d 540 (1991); *Rose v. City of Lincoln*, 234 Neb. 67, 449 N.W.2d 522 (1989).

Assuming, arguendo, that the instructions were erroneous with respect to defense of property, Vacanti has suffered no prejudice. Vacanti received a judgment in his favor; Master was found liable. The judgment necessarily implies that the jury rejected Master's claimed defense of property.

Vacanti argues that he was prejudiced because the instructions misled the jury into believing that the jury should mitigate damages if the assault and battery were provoked. We disagree.

Vacanti correctly states that in an action for assault and battery, provocation cannot be considered in mitigation of damages. *Haumont v. Alexander*, 190 Neb. 637, 211 N.W.2d 119 (1973); *Horky v. Schroll*, 148 Neb. 96, 26 N.W.2d 396 (1947). The damage instruction in the present case informed the jury that if they found for Vacanti on the question of liability, then it would be the jury's duty to award damages for Vacanti's injuries, his pain and suffering, and the reasonable value of his medical care reasonably needed to date. The damage instruction does not mention either provocation or defense of property, and does not suggest that the jury would be entitled to mitigate damages based on Vacanti's behavior.

Two other instructions, not discussed by Vacanti, demonstrate that the trial court properly explained the role of provocation. First, the trial court instructed the jury that "words or acts that do not amount to an assault, even when spoken or performed for the purpose of provoking an assault[,] are not a defense to a civil action on the ground of assault." Second, the trial court instructed the jury that the allegations of the parties, including Master's claim that Vacanti provoked the incident, were not to be considered evidence in the case. We find that the jury instructions, when read as a whole, do not suggest that the jury could mitigate damages based on provocation.

Because the jury instructions did not prejudice Vacanti either as to liability or as to damages, we conclude that Vacanti is not entitled to reversal based upon the jury instructions.

Vacanti next asserts that the trial court erred in refusing to admit a medical report into evidence. In all proceedings where the Nebraska Evidence Rules apply, admissibility of evidence is controlled by the Nebraska Evidence Rules, not judicial discretion, except in those instances under the Nebraska Evidence Rules when judicial discretion is a factor involved in admissibility of evidence. *State v. Anderson, ante* p. 237, 512 N.W.2d 367 (1994); *State v. Baker, ante* p. 153, 511 N.W.2d 757 (1994); *State v. Wood, ante* p. 63, 511 N.W.2d 90 (1994).

The source of the medical report requires some explanation. Vacanti testified that he was still experiencing back pain 3 or 4 months after the incident. At that time, he went to the Mayo Clinic in Scottsdale, Arizona. After Vacanti had returned from Arizona, Dr. Michael A. Covalciuc of the Mayo Clinic sent Vacanti a report. The report is in the form of a letter detailing Vacanti's examination and evaluation, and includes numerous test results as well as a bill for services.

At trial, Master's expert witness, Dr. John Goldner, testified that he had read the report and that he had relied on the report in forming his diagnosis and opinion. During cross-examination, Vacanti offered the report into evidence, but Master objected on the grounds of hearsay, and the trial court sustained the objection.

Medical reports produced out of court are hearsay. *Zier v. Shamrock Dairy of Phoenix, Inc.*, 4 Ariz. App. 382, 420 P.2d 954 (1966); *Matter of Fox*, 504 So. 2d 101 (La. App. 1987); *Pietrowski v. Mykins*, 498 S.W.2d 572 (Mo. App. 1973); *Ankeny v. Grunstead*, 170 Mont. 128, 551 P.2d 1027 (1976); *Potts v. Howser*, 274 N.C. 49, 161 S.E.2d 737 (1968); *Brewer v. Erwin*, 287 Or. 435, 600 P.2d 398 (1979); *Cross v. Houston Belt & Terminal Railway Company*, 351 S.W.2d 84 (Tex. Civ. App. 1961). The report in the present action is an out-of-court statement by the Mayo Clinic doctors who examined and conducted tests on Vacanti. The report was offered to prove the truth of the matter asserted; in his offer of proof, Vacanti's counsel informed the court that if admitted into evidence, the report "would have shown what is contained [therein]." As hearsay, the report is inadmissible unless it falls within one of the hearsay exceptions. See Neb. Evid. R. 802, Neb. Rev. Stat.

§ 27-802 (Reissue 1989).

Vacanti advances two arguments in support of the report's admissibility. First, Vacanti argues that the report is admissible under the hearsay exception for statements made for purposes of medical diagnosis or treatment. Neb. Evid. R. 803(3), Neb. Rev. Stat. § 27-803(3) (Reissue 1989). We disagree.

Rule 803(3) provides an exception, regardless of the availability of the declarant, for "[s]tatements made for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment." This hearsay exception is identical to Fed. R. Evid. 803(4). Commentators agree on the rationale for this hearsay exception: the reliability of statements for purposes of medical diagnosis or treatment is assured "by the likelihood that the patient believes that the effectiveness of the treatment will depend on the accuracy of the information provided." 2 McCormick on Evidence § 277 at 246 (John W. Strong 4th ed. 1992). See, 4 Jack B. Weinstein & Margaret A. Berger, Weinstein's Evidence ¶ 803(4)[01] (1993); Richard Collin Mangrum, *The Law of Hearsay in Nebraska*, 25 Creighton Law Review 499 (1992).

At the heart of this hearsay exception lie statements made by a patient to a treating physician. However, the exception casts its net wider than the patient-physician relationship. Under the federal and Nebraska rules of evidence, the statement need not be made by the patient and need not be made to a physician. 2 McCormick on Evidence, *supra*. See, also, Fed. R. Evid. 803(4) advisory committee's note (allowing statements to hospital attendants, ambulance drivers, or even family members, if the statement is made for purposes of medical diagnosis or treatment); Mangrum, *supra* (stating that one of the foundational elements of the exception is a statement *to a health care provider*). As a general rule, then, this hearsay exception applies to persons seeking medical assistance from persons who are expected to provide some form of health care.

The report in the present case does not lie within this hearsay exception. The report is the opposite of a statement covered by

the exception; the report is a letter *by* a doctor *to* his patient. In addition, Vacanti has failed to demonstrate that the report was provided for the purpose of medical diagnosis or treatment. Accordingly, we find that the report is not admissible under Neb. Evid. R. 803(3).

Second, Vacanti argues that because Dr. Goldner was asked about the report on direct examination, Vacanti was entitled to have the report admitted into evidence during cross-examination. Vacanti argues that the full report is necessary to "bring to light the whole transaction." Brief for appellant at 21. We disagree.

An expert medical witness may base an opinion on the medical records of another treating doctor when the records are of a type reasonably relied upon by experts in the particular field. *Clark v. Clark*, 220 Neb. 771, 371 N.W.2d 749 (1985). See Neb. Evid. R. 703, Neb. Rev. Stat. § 27-703 (Reissue 1989). The mere fact that an expert relied on medical records, however, does not transform those records from inadmissible hearsay into admissible evidence. *Streight v. Conroy*, 279 Or. 289, 566 P.2d 1198 (1977); *Ankeny v. Grunstead*, 170 Mont. 128, 551 P.2d 1027 (1976); *Pietrowski v. Mykins*, 498 S.W.2d 572 (Mo. App. 1973); *Cross v. Houston Belt & Terminal Railway Company*, 351 S.W.2d 84 (Tex. Civ. App. 1961). To allow such a transformation "would deprive opposing parties of an opportunity to cross-examine on the background, competency and completeness of the report and the qualifications of the doctor." *Streight*, 279 Or. at 294-95, 566 P.2d at 1201. We conclude that the trial court did not err in refusing to admit the medical report into evidence.

Vacanti next asserts that the verdict is the result of mistake and is inadequate. The law is well established that an appellate court will not reverse a jury verdict as inadequate unless

> it is so clearly against the weight and reasonableness of the evidence and so disproportionate to the injury proved as to demonstrate that it was the result of passion, prejudice, mistake, or some other means not apparent in the record, or that the jury disregarded the evidence or rules of law.

*Sanwick v. Jenson*, 244 Neb. 607, 611, 508 N.W.2d 267, 270 (1993).

Vacanti claims that the jury verdict was the result of two mistakes. The first mistake, Vacanti argues, is that the jury improperly awarded him damages for the repair of his CD player. To support this argument, Vacanti notes that the medical bills admitted into evidence were whole dollar figures, that the repair bill for the CD player amounted to $70.*07*, and that the award of damages was $1,795.*07*. The second mistake, Vacanti argues, is that the jury overlooked one of the medical bills, because the amount awarded is less than the amount of the bills. To support this argument, Vacanti notes that exhibit 15 consists of two bills—one totaling $1,300 and one totaling $1,400—on thin paper, stapled together. A third bill was stipulated at $460.

We find that the award is not the result of mistake; rather, it is the result of conflicting evidence presented at trial.

At trial, the witnesses gave conflicting testimony as to the proximate cause of Vacanti's injuries. Vacanti testified that immediately after the incident at Master's place of business, he experienced back pain and went to see a Dr. Bolamperti. Vacanti testified that the pain worsened and later developed into numbness on his right side, down his right arm, and through his leg. Vacanti testified that the numbness was still occurring. Vacanti admitted that due to his work as a bricklayer he had been treated for back pain prior to the incident, but Vacanti also stated that he was not having any back trouble at the time of the incident.

Dr. Edward Schima, a neurologist, testified that he first examined Vacanti on April 6, 1992. After examining Vacanti and ordering several tests, Dr. Schima diagnosed Vacanti as having a posttraumatic cervical disk, lumbar spondylosis, and degenerative lumbar disease. Dr. Schima explained that a bulging or herniated disk could cause weakness in the limbs. He testified that in his opinion, the cervical disk problems were permanent and were caused by the incident.

Dr. Goldner, also a neurologist, testified that he examined Vacanti on June 24, 1991. Dr. Goldner testified that in his opinion, the pain and numbness on Vacanti's right side were not caused by the incident.

In deciding whether Vacanti's injuries were indeed caused by the incident, the jury no doubt considered the conflicting

descriptions of the incident itself. Vacanti testified that three people attacked him, although he could identify only two. Vacanti testified that he was choked by Hull, who put his arms around Vacanti's neck from the back and then hung on while the two struggled through the store and out the door. Vacanti also testified that he felt someone grab his neck and arms, felt someone hold his legs, and felt someone bite his finger.

Hull testified that he held onto Vacanti's upper arms while Vacanti dragged Hull outside the building and pushed him against a wall. Hull also testified that Dolezal took the CD player away from Vacanti but did not grab Vacanti.

Dolezal testified that he saw two people "scuffling" and that once Dolezal reached the outside, he saw Hull pinned against a wall behind Vacanti. Dolezal testified that he took the CD player away from Vacanti, but otherwise did not touch him.

Lois Fernald, also a Master employee at the time of the incident, testified that she saw Hull's hand on Vacanti's arm. Fernald also stated that she saw Dolezal take the CD player from Vacanti.

Based on the conflicting testimony presented at trial, the jury could have reached any number of factual conclusions and awarded damages accordingly. The jury was entitled to determine what portion of the claimed injury was proximately caused by the incident and what portion of the medical bills was reasonably required. See, *Nickal v. Phinney*, 207 Neb. 281, 298 N.W.2d 360 (1980) (jury is not obliged to accept undisputed testimony of plaintiff and his doctor as to the full extent of the claimed damages); *Cooper v. Hastert*, 175 Neb. 836, 124 N.W.2d 387 (1963) (jury has the right to decide whether the incident was the proximate cause of the injuries and the medical bills, even when the evidence is undisputed). The jury could have concluded that Vacanti's back pain, but not his right-side numbness, was caused by the incident. Alternatively, the jury could have concluded that the medical bills, which were incurred while Vacanti was under Dr. Schima's care, 2½ years after the incident, were not reasonably required. See *Cooper, supra* (jury might have found it significant that medical bills were incurred 2 years after the accident).

"[W]here the instructions have not been found wanting, no

improper influences were before the jury, and the extent of injury or the amount of damages was disputed, verdicts claimed to have been inadequate have been sustained." *Sanwick v. Jenson*, 244 Neb. 607, 610, 508 N.W.2d 267, 270 (1993). Accord, *Nickal, supra*; *Hunter v. Sorensen*, 201 Neb. 153, 266 N.W.2d 529 (1978); *Cullinane v. Milder Oil Co.*, 174 Neb. 162, 116 N.W.2d 25 (1962). In the present case, the instructions were not prejudicially erroneous, no improper influences have been claimed, and the extent of the damages was hotly disputed. We conclude that the jury verdict was a valid attempt to resolve the conflicting evidence presented at trial. The verdict was not the result of mistake and was not inadequate.

In summary, we hold that the jury instructions were not prejudicial to Vacanti, that the medical report was properly excluded as inadmissible hearsay, and that the award of damages was not the result of mistake and was not inadequate. The judgment of the district court is affirmed.

AFFIRMED.

LANPHIER, J., not participating.