**Juanita BOONE, Plaintiff-Respondent,**

v.

**Evelyn RICHARDSON, Defendant-Appellant.**

**No. 8347.**

Springfield Court of Appeals.

Missouri.

Feb. 19, 1965.

Harold D. Jones, Bock & Jones, New Madrid, for defendant-appellant.

Web A. Welker, Welker & Young, Portageville, for plaintiff-respondent.

HOGAN, Judge.

In this action against Evelyn Richardson, Juanita Boone sought to recover $10,000.00 damages for personal injuries, loss of wages and impairment of earning capacity sustained as a result of a collision between the plaintiff's and defendant's automobiles. The collision occurred at an intersection in Portageville, Missouri, on January 31, 1963. Upon trial of the case on January 10, 1964, a jury returned a verdict finding the issues generally for the plaintiff and against the defendant, but assessing plaintiff's damages at the sum of "$ 0 ." The plaintiff subsequently filed a motion for new trial on the issue of damages only, and the defendant filed an after-trial motion for judgment as authorized by Rule 72.02, V.A. M.R. The trial court granted a new trial on the issue of damages only, and denied defendant's motion for judgment. The defendant appeals. The principal questions before us, therefore, are: (1) whether the plaintiff made a submissible case upon the ground or grounds of negligence actually submitted to the jury, Bowers v. Columbia Terminals Co., Mo.App., 213 S.W.2d 663, 667 [3]; and (2) whether the jury's verdict can reasonably be construed as a general verdict for the plaintiff with an inadequate assessment of damages so as to authorize the discretionary grant of a new trial on the ground that the verdict was against the weight of the evidence. Underwood v. Brockmeyer, Mo., 318 S.W.2d 192, 193–194 [1–4].

The plaintiff, a 27-year-old legal secretary, having been to "mother's for lunch," was returning to work about 12:45 p. m. on the day in question. It was a bright, sunshiny day, the visibility was good and the pavement was dry. The plaintiff was driving south on King Avenue, which is described as a "two-lane blacktop" street. The defendant was driving east on Fourth Street, which is also referred to as a "two-lane blacktop" street. At the place in question, King Avenue, which runs north and south, is intersected by Fourth Street, an

east and west street. King Avenue has been designated as a "through" street by ordinance, and vehicles proceeding east or west on Fourth Street are required to come to a complete stop before entering onto or crossing King Avenue. The intersection in which the collision occurred is presumably a right angle intersection, and there is a stop sign at the southwest corner of the intersection, according to the defendant, "maybe half a foot back west of the intersection."

As Mrs. Boone related the incident, she was going south on King Avenue, wholly in the west (southbound) lane, "driving about 20." When she was "about a fourth of a block" from the intersection, she saw Mrs. Richardson approaching from the west about "half-a-block" from the intersection, and Mrs. Richardson appeared to be slackening her speed. " * * * I saw Mrs. Richardson's car approaching and it appeared to be slowing." Assuming that the defendant would stop, the plaintiff proceeded into the intersection without looking further. As the plaintiff got in the "middle of the intersection, or as I passed her lane of traffic, why, she hit me." Mrs. Boone testified that her vehicle was struck at the right rear door, damaging the right rear door and panel.

The defendant's testimony was that she stopped at the intersection four or five feet west of the intersection, looked both ways, and "started to pull out on King." After she had proceeded three or four feet, she then saw the plaintiff, "slammed [the] brakes on," and swerved to the left, attempting to avoid the plaintiff. The defendant's statement was that "she [plaintiff] was on me and I was on her before I even saw her. * * *" Mrs. Richardson's testimony indicates that her field of vision was clear both to the north and to the south as she entered the intersection. The damage to the defendant's automobile was described as being only "a few scratches" on the hood and front end.

Though the force of the impact was not sufficient to leave a visible mark on her body, Mrs. Boone maintained that she suffered painful and disabling injuries as a result of the accident. Her evidence was that shortly after the casualty she began having headaches and pain in her shoulders and arms, and that she had sustained an injury to her back. For six or seven months the headaches and neck pain had been severe. At trial time the severity of her symptoms had abated somewhat, but she still had stiffness in her arms and shoulders and "still [had] headaches also but not as extreme as they were in the beginning."

Mrs. Boone had consulted a local physician within a day or two of the accident, and he had prescribed medicine for pain, muscle relaxants and tranquilizers. The plaintiff had remained on this medication until midsummer 1963. The plaintiff's evidence was that her husband was in military service and that she had planned to leave her job in Portageville about the end of March 1963, but because of her injuries she had been obliged to quit sooner than she anticipated. During the last few weeks of her employment she had been unable to work full time, and by means of her employer's office records she estimated her loss of wages at $324.00. It was brought out on her cross-examination that after she and her family moved to Charleston, South Carolina, in April 1963, she cared for her two children and her husband, prepared all the family's meals, did all the laundry, and managed their five-room house substantially without assistance.

Two physicians testified concerning the plaintiff's injuries. Dr. James Grable, who appears to have been the plaintiff's family doctor when she lived at Portageville, saw the plaintiff a short time after the accident, and he had diagnosed the plaintiff's injuries as a sprain of her neck and a muscle strain of her back. Upon examination, the plaintiff had given a history of being involved in an automobile accident, but no

bone injuries were apparent in her X-rays, and Dr. Grable's treatment had consisted primarily of supportive measures. At first the doctor had prescribed only muscle relaxants and local heat. The plaintiff did not respond satisfactorily and Dr. Grable testified that he had increased her medication in strength and had prescribed a corticosteroid to reduce inflammatory reaction. At a still later date he had prescribed a tranquilizer for Mrs. Boone. Dr. Grable had seen the plaintiff on five occasions between February 2, 1963, and March 26, 1963; after an initial period during which there was no marked improvement, the plaintiff's symptoms had gradually subsided, although when the doctor examined the plaintiff on November 23, 1963, apparently in preparation for the trial, she was still complaining of tenderness about the neck and the left side of the back. At the November examination, the plaintiff had also complained of pain radiating out into her arms, especially the left arm. Dr. Grable had no opinion as to whether the plaintiff's condition was permanent or temporary. He was, however, of the opinion that she had been totally disabled for a period of about two weeks following her accident, and he indicated that in his opinion she was still partially disabled at the time of trial.

The defendant produced a Dr. Raymond Ritter, who had examined the plaintiff at the defendant's request some ten months after the accident. Dr. Ritter's findings were negative as to the existence of any substantial injury on the plaintiff's part. On November 25, 1963, this physician made what he described as a "complete physical examination" of the plaintiff, and found that she had a full range of motion of her head in all directions, a full range of motion in her arms and hands, and that the contour of her back was normal, which indicated to him that there was no straightening of the contour from muscle spasm. Dr. Ritter's X-ray examination of the plaintiff's spine indicated no abnormality or deformity of the structure, and he concluded by saying that there had been "no

objective sign" of any injury upon his examination, although in his opinion the plaintiff had sustained a sprain of her neck and possibly of her back.

Turning first to the contention that the plaintiff made no submissible case for the jury, our attention is directed to the fact (and we note) that the plaintiff submitted her case both upon primary and humanitarian negligence. However, if the plaintiff made a submissible case on any theory actually submitted, there was no error in refusing the defendant's motion for directed verdict, and the trial court's action in that respect must be affirmed. Nelson v. Wabash Railroad Co., Mo., 300 S.W.2d 407, 409 [1]; DeLay v. Ward, 364 Mo. 431, 435, 262 S.W.2d 628, 630 [2]; Fuzzell v. Williams, Mo.App., 288 S.W.2d 372, 373 [1]. We must, of course, take that view of the evidence most favorable to the plaintiff and give her the benefit of all reasonable inferences that may be drawn from all the evidence, disregarding the defendant's evidence except where it aids the plaintiff's case. Brown v. Wooderson, Mo., 362 S.W. 2d 525, 526 [1]; Highfill v. Brown, Mo., 340 S.W.2d 656, 658 [2–4]; Fenneren v. Smith, Mo., 316 S.W.2d 602, 606, 608. We also note that the defendant has objected— in this court—to two of the instructions given as being misdirection to the jury. We think, however, that we may not consider the defendant's assignments of error directed to the instructions, for the defendant filed no motion for new trial, but only an after-trial motion for judgment. In general, only the submissibility of the plaintiff's case is preserved for appellate review by a defendant's after-trial motion for judgment, Millar v. Berg, Mo., 316 S.W.2d 499, 501–502, and allegations of error relating to instructions must be preserved in the motion for new trial. Rule 79.03, V.A. M.R.; see Arnold v. Fisher, Mo.App., 359 S.W.2d 602, 609 [11].

The plaintiff's theory of her primary submission was that the defendant failed to yield the right-of-way by stopping before

she drove into the intersection, although the plaintiff's vehicle was then already in the intersection or approaching so closely as to constitute an immediate hazard. In this connection, it must be borne in mind that the City of Portageville had designated King Avenue as a favored thoroughfare, or "through street," and had erected a stop sign at the southwest corner of the intersection; it had, by ordinance, required all vehicles to come to a complete stop on Fourth Street before proceeding onto King Avenue, and incidentally to yield the right-of-way to other vehicles approaching so closely as to constitute an immediate hazard. The mutual rights and duties of the parties were analogous to those created by Section 304.021(4), RSMo (1959), V.A.M.S., which, to some extent, distinguishes this case from the cases cited by the appellant, e. g., Major v. Davenport, Mo.App., 306 S.W.2d 626, and Douglas v. Whitledge, Mo. App., 302 S.W.2d 294, both of which deal with uncontrolled intersections.

It is true, as the defendant argues, that Mrs. Boone gave conflicting statements as to the defendant's position west of the intersection as Mrs. Boone approached. In her pre-trial deposition, the plaintiff placed the defendant one-fourth of a block west of the intersection, and then on trial stated that she was half a block west when plaintiff was still one-quarter of a block north. However, the plaintiff was not conclusively bound by her own estimates of speed and distance, Fenneren v. Smith, supra, 316 S.W.2d at 608, and the jury was at liberty to accept either the statement in the plaintiff's deposition or her trial testimony as true. Moore v. Ready Mixed Concrete Co., Mo., 329 S.W.2d 14, 20 [2, 3]. The plaintiff estimated her speed at "about 20," and the defendant estimated hers at "probably 15 to 20 miles an hour," as the vehicles approached the intersection. Without indulging in precise calculations, the jury could infer at least that as plaintiff and defendant approached the area common to both streets, Mrs. Boone was somewhat closer to the intersection on the favored street, Mrs. Richardson was somewhat further away, and that they were simultaneously approaching at a fairly constant rate of speed. It would then reasonably follow that the plaintiff came to and entered the intersection first. The intersection was described as "open," so that either driver was inferably visible to the other as she approached.

The point of impact might have been more precisely developed, but it was shown that the damage to the plaintiff's automobile was located at the right rear, and that to the defendant's vehicle upon the front of the automobile, including the hood. The location of the damage to the vehicles would in itself be some evidence of their relative positions at the time of impact, Thompson v. Jenkins, Mo., 330 S.W.2d 802, 805–806; Curtin v. Benjamin, 305 Mass. 489, 26 N.E.2d 354, 355 [3, 4], 129 A.L.R. 433, and in addition the plaintiff testified that she was struck "just as I got in the middle of the intersection, or as I passed her lane of traffic. * * *" This evidence, in our view, tends to locate the point of impact in the southwest quadrant of the intersection, and we believe a jury could reasonably infer that Mrs. Boone had entered the intersection and was more than halfway through when she was struck.

The defendant argues that there is no evidence in the record that she did not stop, as required by the ordinance, pointing to the testimony of the plaintiff that she made no observation of the defendant's vehicle after she saw the defendant approaching one-fourth to one-half block west of the intersection, and to the defendant's evidence that she stopped at the stop sign "about four foot, maybe five," west of the intersection. The defendant's duty to the plaintiff would not be discharged, however, merely by making a stop and then proceeding into the intersection. After she stopped west of the stop sign, the defendant still had the duty to observe the plaintiff's vehicle and, if it was approaching so closely as to constitute an immediate hazard, to yield the

right-of-way by stopping again, to the extent that it was possible for her to do so. Herr v. Ruprecht, Mo., 331 S.W.2d 642, 648 [5, 6]; see James v. Berry, Mo.App., 301 S.W.2d 530, 533 [5]. Mrs. Richardson testified that after she stopped west of the intersection she then proceeded, "not more than five miles an hour," and could have stopped again almost instantly. The evidence justifies an inference that when' the defendant stopped the plaintiff's vehicle was in or closely approaching the intersection and was visible to the defendant. The defendant had a clear field of vision and the ability to stop at once. Mrs. Richardson described the sequence of events by saying " * * * she was on me and I was on her before I even saw her * * *"; and when she was asked if she had seen the plaintiff before the collision, she stated that she had not. We believe there was no error in submitting the plaintiff's negligence in failing to stop before entering the intersection.

The defendant also maintains that the plaintiff was guilty of contributory negligence as a matter of law, because, defendant says, it was incumbent upon the plaintiff to maintain a lookout ahead and continue her observation of the intersection as she approached. While we agree that a jury might have found the plaintiff guilty of contributory negligence, the defendant's argument takes no account of Mrs. Boone's testimony, at least twice repeated, that when she saw the defendant approaching the defendant appeared to be slowing. This is entirely consistent with the defendant's testimony that she did stop, at least momentarily, at the intersection. It is true that the plaintiff had a duty to maintain a lookout ahead, but this did not impose any duty to observe the defendant's vehicle continuously, if it reasonably appeared that defendant was slowing. Pitts v. Garner, Mo., 321 S.W.2d 509, 517–518. If the defendant appeared to be slowing or slackening her speed, we believe the plaintiff had a right to assume that the defendant's non-emergency vehicle approaching the favored thoroughfare would obey the ordinance and stop. Pitts v. Garner, supra, 321 S.W. 2d at 518; Collier v. St. Louis Pub. Serv. Co., Mo.App., 298 S.W.2d 455, 460; Anno., 164 A.L.R. 8, 73–74, Section g. (3) (1946). It must be borne in mind that plaintiff had, by defendant's own calculations (which are of course only approximations), only slightly over 2.5 seconds in which to look again and appreciate the situation after she first saw the defendant, for the plaintiff would have covered the distance to the intersection, which we assume to be 75 feet, Lilly v. Boswell, 362 Mo. 444, 452–453, 242 S.W. 2d 73, 76 [4], in about 2.5 seconds at 20 miles per hour, or 29.3 feet per second. We think we cannot say that the plaintiff was guilty of contributory negligence as a matter of law, though we do not say or intimate that the facts compel the conclusion either that the defendant was negligent or that the plaintiff was not contributorily negligent. We merely say that, in our view, if all the evidence and the reasonable inferences therefrom are considered, reasonable minds could differ, and therefore these issues were properly submitted to the jury. Alvey v. Sears, Roebuck & Co., Mo., 360 S.W.2d 231, 236; Nelson v. O'Leary, Mo., 291 S.W.2d 142, 147 [4]; Brandt v. Thompson, Mo., 252 S.W.2d 339, 341 [1].

The defendant next argues that the trial court erred in granting a new trial on the issue of damages only because the jury's verdict was in fact a finding for the defendant. She argues, at least by inference, that a judgment for the defendant should have been entered by the trial court, or that we should direct the entry of such a judgment. The plaintiff counters with the argument that since the new trial was granted on a discretionary ground, as indeed it was, we have only the function of ascertaining whether the trial court abused its discretion in awarding the new trial solely on the issue of damages.

The transcript before us shows that after the cause had been submitted and the jury had deliberated for some time, they returned to the court room to ask for information

from the trial court, and made the following inquiry:

"A JUROR: Your Honor, we the jury find that we are running into a problem. *Frankly we have two jury men that didn't vote for the defendant,* (our emphasis) finding her negligent on her part, and then on the amount of the amount, we have nine that is agreed on one amount, and we are wondering should our names be put on into it, this paper here.

"THE COURT: Just recheck the instructions and particularly the last instruction. You will be guided by the instruction and you will find that situation covered in the instruction.

"A JUROR: We read it, and of course, they were a different number of men on the finding the defendant negligent and the number of men that the amount of money that we decided on for her, for the plaintiff.

"THE COURT: Of course, you can only return one verdict so that any who may agree on one verdict must sign the verdict, but they must be in agreement on both points that you have discussed. You think that answers your question?

"A JUROR: Yes, sir, I believe it does."

The jury again retired. Somewhat later they returned and were then asked:

"THE COURT: Have you reached a verdict?

"THE FOREMAN: We have.

"THE COURT: 'We, the jury in the above entitled cause, find the issues in favor of the plaintiff and against the defendant, and assess plaintiff's damages at no dollars.' You gentlemen step back in the jury room, will you? (The jury was returned to the jury room, and after discussion off the record, was returned to the courtroom.)

"THE COURT: Now, gentlemen, the verdict which I read, is that the verdict of the jury?

"THE FOREMAN: Yes, it is, Your Honor.

"THE COURT: The ones that have signed it, that is your verdict. All right."

This verdict was then received by the trial court without immediate objection on the part of either party, though within six days the plaintiff filed a motion for new trial on the issue of damages alone. The transcript does not contain the actual judgment entered, but from the minute entry, which is not really a judgment, Byrd v. McGinnis, Mo., 299 S.W.2d 455, 460 [7, 8], we take it that the trial court regarded the verdict as a verdict for the plaintiff with a wholly inadequate assessment of damages. In this respect, we think the trial court erred.

The appellant, brushing aside the Missouri decisions, cites us to cases from other jurisdictions, some of which hold, as she says, that the return of a verdict for the plaintiff affirmatively stating that it is for no amount of damages warrants the entry of a judgment for the defendant. Anno., 49 A.L.R.2d 1328, 1334–1336, Section 8 (1956). We find it unnecessary for the purposes of this appeal to collect and distinguish the authorities in other jurisdictions, for we believe that past rulings in Missouri make it necessary to reverse and remand the cause for a new trial, both on the issue of liability and damages.

Nor is it necessary to reiterate at length all the general principles applicable where defective verdicts have been presented, since those principles have been recently and fully reviewed by the Supreme Court. Thorne v. Thorne, Mo., 350 S.W.2d 754, 757–758. The statutes and rules applicable here require the jury to return a general verdict, which must include a finding or pronouncement on the issue of damages, where that issue is submitted. Thorne

v. Thorne, supra, 350 S.W.2d at 757. While it is doubtless true that a verdict should be considered in light of the record to see if the court can ascertain the jury's intent, even when the verdict is inartfully expressed, Thorne v. Thorne, supra, 350 S.W.2d at 757; 53 Am.Jur., Trial, Section 1036, pp. 716–717, it is also true that a verdict is the sole basis for the entry of a judgment, and if it is not sufficient to sustain the judgment, the judgment is void. Thorne v. Thorne, supra, 350 S.W.2d at 757 [1].

In this particular case, however, by whatever avenue we approach, we find ourselves unable to construe the verdict with certainty. It is not only possible, but even likely, that the jury was confused. The plaintiff's proof of injury was weak, contradictory and sketchily presented. Coupled with this, it was shown that plaintiff's husband had filed a separate suit arising out of the same transaction, and the defendant carefully instructed the jury that no recovery could be had by the plaintiff for medical expenses or damages to the vehicle, since recovery for those losses was being sought in a separate action. It would doubtless be possible for a jury to conclude that in the respects for which recovery was sought, there was no damage to the plaintiff shown. Further, it is possible to construe the comments preserved in the record (" * * * we have two men that *didn't* vote for the defendant * * *") as an indication that ten jurors desired to find generally for the defendant. On its face, however, the verdict begins by finding the issues generally for the plaintiff, and then it goes on to state positively that the plaintiff had suffered no damage whatever. The verdict, as finally returned and accepted, was signed by nine of the jurors.

■■■■■ The parties were entitled to the unconditional judgment of the jury, rather than a court's interpretation of its finding, Ralston Purina Co. v. Kennedy, Mo.App., 347 S.W.2d 462, 467, and in our view the verdict received is, on its face, so contradictory as to be a nullity. Granted, there may be instances in which a finding for a small amount of damages in a personal injury case is consistent with a pronouncement of liability on the defendant's part, at least where the damages awarded are substantial enough to represent "an effort at measured compensation." Davidson v. Schneider, Mo., 349 S.W.2d 908, 913 [2–5]. Still, there must be some injury before there can be any actionable negligence, and if the defendant's breach of duty causes no actual damage to the plaintiff, the defendant is entitled to a verdict. Schaefer v. Accardi, Mo., 315 S.W.2d 230, 233–234 [6, 7] [8, 9]; Biscoe v. Kowalski, Mo., 290 S.W.2d 133, 137–138 [3] [4] [5, 6]; Eickmann v. St. Louis Pub. Serv. Co., 363 Mo. 651, 665–666, 253 S.W.2d 122, 131 [12]; Wise v. Towse, Mo.App., 366 S.W.2d 506, 509–511; 2 Harper & James, Torts, Section 25.1, p. 1300 (1956); Prosser, Torts, Section 35, pp. 165–166 (2d ed. 1955).

■■■ It would probably serve no useful purpose here to point out that the trial court might properly have called the defect in the verdict to the attention of the jury and required its correction before it was received. Thorne v. Thorne, supra, 350 S.W.2d at 758 [9]. Apparently the trial court—for whose judgment we entertain considerable respect—construed the verdict as a finding for the plaintiff, with a wholly inadequate assessment of damages, and therefore ordered a new trial upon the issue of damages only. However, upon careful consideration, it is our view that the verdict returned is not merely equivocal or uncertain; the jury's finding of the issues for the plaintiff flatly contradicts its finding that the plaintiff suffered no damages whatever. To take either the first clause ("we * * * find the issues in favor of the plaintiff and against the defendant") or the second ("and assess plaintiff's damages at the sum of $ 0 ") as the true judgment of the jury is to disregard the balance of the sentence. The verdict cannot be fairly resolved into a definite finding for either party, and therefore it will not support the entry of

any judgment. Thorne v. Thorne, supra, 350 S.W.2d at 757 [1]; Hall v. Martindale, Mo.App., 166 S.W.2d 594, 603; Lindstrom v. Kansas City Southern Ry. Co., 202 Mo. App. 399, 401–402, 218 S.W. 936, 937; Singleton v. Kansas City Baseball & Exhibition Co., 172 Mo.App. 299, 305–306, 157 S.W. 964, 965–966 [1]; Newton v. St. Louis and S. F. R. Co., 168 Mo.App 199, 206, 153 S.W. 495, 498. Cf., Carnes v. Thompson, Mo., 48 S.W.2d 903, 904–905 [4, 5]. The cause must be reversed and remanded for a new trial upon all issues. It is so ordered.

RUARK, P. J., and STONE, J., concur.