**RUSCILLI, etc., Appellant,**

v.

**RUSCILLI, Trustee, et al., Appellees.**

[Cite as *Ruscilli v. Ruscilli* (1993), 90 Ohio App.3d 753.]

Court of Appeals of Ohio,
Franklin County.

No. 93AP–615.

Decided Sept. 23, 1993.

*Mercullo, Reister & Swinford Co., L.P.A., Victor D. Merullo* and *Leslie B. Swinford, Jr.;* and *Bruce W. Powell,* for appellant.

*Thompson, Hine & Flory, Thomas J. Bonasera* and *William C. Wilkinson,* for appellee Ruscilli Construction Company, Inc.

*Porter, Wright, Morris & Arthur* and *James D. Curphey,* for appellee Penn Mutual Life Insurance Company.

*Jones, Troyan, Coco, Pappas & Perkins* and *Mark S. Coco,* for appellees Louis G. Ruscilli, Trustee, Louis G. Ruscilli, and Louis J. Ruscilli.

*Hamilton, Kramer, Myers & Cheek, Robert V. Morris II* and *Barry W. Littrell,* for appellees Angela K. Ruscilli and Robert A. Ruscilli, Jr.

---

Petree, Judge.

Plaintiff, James R.L. Ruscilli, through his next friend and guardian Deborah K. Niple Ruscilli, appeals from a judgment of the Franklin County Probate Court, which granted summary judgment to defendants, Louis G. Ruscilli, both individually and as trustee of decedent Robert A. Ruscilli's 1982 insurance trust, Ruscilli Construction Company, Inc., and Penn Mutual Life Insurance Company. The trial court thus held that plaintiff was not entitled to any benefits from the irrevocable trust set up by his deceased father, Robert A. Ruscilli, in 1982. On appeal of this ruling, plaintiff presents the following assignments of error:

"I. The Probate Court of Franklin County erred in granting summary judgment in favor of defendants on Count One of plaintiff's complaint as there existed genuine issues of material fact upon which reasonable minds could differ as to whether plaintiff was a child 'born in wedlock' making summary judgment in favor of the defendants improper in this case.

"II. The Probate Court of Franklin County erred in overruling plaintiff's motion for partial summary judgment as plaintiff was a child 'born in wedlock' in accordance with the laws of the state of Ohio."

Plaintiff asserts in these assignments of error that there were genuine issues of material fact to be tried which precluded summary judgment for defendants. In this regard, we note preliminarily that Civ.R. 56(C) provides that summary judgment should be granted only if reasonable minds can reach but one conclusion, and that conclusion is adverse to the nonmoving party. The party seeking summary judgment bears the initial responsibility of identifying those elements of the opponent's case which raise no genuine issues of material fact and upon which the moving party is entitled to judgment as a matter of law. *Mitseff v. Wheeler* (1988), 38 Ohio St.3d 112, 526 N.E.2d 798, syllabus. Once the moving party satisfies this burden, the party opposing the motion has an affirmative duty to produce evidence on any issue for which that party bears the burden of production at trial. *Wing v. Anchor Media, Ltd. of Texas* (1991), 59 Ohio St.3d 108, 570 N.E.2d 1095, paragraph three of the syllabus. (*Celotex v. Catrett* [1986], 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265, approved and followed.) When reviewing a summary judgment, we apply the same standard as that employed by the trial court. *Lorain Natl. Bank v. Saratoga Apts.* (1989), 61 Ohio App.3d 127, 129, 572 N.E.2d 198, 199. Construing the evidence most strongly in favor of the

nonmoving party, summary judgment will be granted where that party fails to make a showing sufficient to establish the existence of an element essential to that party's case and upon which it will bear the burden of production at trial. *Celotex, supra,* 477 U.S. at 322, 106 S.Ct. at 2552, 91 L.Ed.2d at 273. The evidence established in the record before this court discloses the following facts.

Plaintiff filed a complaint in the common pleas court on July 16, 1991 alleging that he had a beneficial interest in life insurance proceeds which plaintiff alleged were improperly diverted by defendants from the irrevocable insurance trust set up by his deceased father, Robert A. Ruscilli, in 1982. This trust was set up by grantor Robert A. Ruscilli to benefit his "spouse and children." He expressly defined the term "children" in the trust as follows:

" * * * 'Child' or 'children' of any person refers to the child or children (as the case may be) of such person, *born in wedlock* to such person either before or after the execution of this agreement. * * *" (Emphasis added.)

At the time this trust was established in 1982, the grantor was married to Diane G. Ruscilli and had two children from that marriage, Angela K. Ruscilli and Robert A. Ruscilli, Jr. The grantor then divorced Diane G. Ruscilli on July 22, 1986. Plaintiff was born six months later to the grantor and Deborah K. Niple. The couple was married a year and one-half after plaintiff's birth. Deborah K. Niple submitted her own affidavit asserting that prior to 1987, she and decedent had entered into a common-law marriage. This affidavit is controverted by the affidavit of defendant Angela Ruscilli. Though the grantor never adopted plaintiff outright, he did sign his birth certificate, thereby attesting to his paternity. Indeed, in 1987, Robert A. Ruscilli set up a second trust to benefit his children, defining this term, in Section 24, as follows:

*"As used herein, 'child' or 'children' of the Grantor refers to the child or children born to the Grantor and Deborah Kay Niple.* 'Child' or 'children' of any other person refers to the child or children (as the case may be) of such person, born in wedlock to such person either before or after the execution of this agreement or such person's death or lawfully adopted by such person either before or after the execution of this agreement * * *." (Emphasis added.)

Robert A. Ruscilli was fatally injured in an automobile accident on February 11, 1989. Defendant Penn Mutual Life Insurance Company then paid a death benefit of $2,734,000 in insurance proceeds to the Ruscilli Construction Company, which plaintiff asserts should have been paid over to Louis G. Ruscilli for plaintiff's benefit under the 1982 insurance trust.

Defendants moved for summary judgment, which was ruled on by the trial court on April 1, 1993. The trial court held that defendants were entitled to summary judgment because plaintiff was not "born in wedlock" under the 1982

trust. The court reasoned that this language was not intended to include subsequently legitimated children. Moreover, the court found that plaintiff was not born in common-law "wedlock" because the grantor, along with Deborah K. Niple, signed a Fairfield County marriage license application under oath which said that he had "no wife living." This, the court reasoned, conclusively barred Deborah K. Niple from claiming that she and the grantor had a pre-existing common-law marriage prior to its being licensed and solemnized.

■ The first argument presented by plaintiff in this case in opposition to the trial court's ruling is that, even though he was born illegitimate because neither the grantor nor his mother were married when plaintiff was born, plaintiff nevertheless qualifies as a child under the 1982 trust's "born in wedlock" language as a matter of law because Robert A. Ruscilli later married plaintiff's mother and acknowledged his birth, thereby rendering him a legitimate child in the eyes of the law. Plaintiff desires that this court ascribe a technical, statutory meaning to the phrase "born in wedlock," whereas defendants desire that the ordinary meaning of this language be utilized.

■ The fundamental tenet for construction of a will or trust is to ascertain, within the bounds of the law, the intent of the grantor or settlor. *Domo v. McCarthy* (1993), 66 Ohio St.3d 312, 612 N.E.2d 706, paragraph one of the syllabus; *Townsend's Executors v. Townsend* (1874), 25 Ohio St. 477. When the language of the instrument is not ambiguous, intent can be gleaned from the express terms of the trust itself. *Domo, supra,* 66 Ohio St.3d at 314, 612 N.E.2d at 708, citing Restatement of the Law 2d, Trusts (1959) 13, Section 4.

■ As stated by plaintiff, absent a contrary intent in the instrument itself, provisions of an *inter vivos* trust will be construed by the law existing at the time of its creation. *Ohio Citizens Bank v. Mills* (1989), 45 Ohio St.3d 153, 543 N.E.2d 1206, paragraph two of the syllabus. This does not mean, however, that the law regarding illegitimate children should be read into this particular trust, as plaintiff contends.

R.C. 2105.17, which relates to intestacy, reads:

"Children born out of wedlock shall be capable of inheriting or transmitting inheritance from and to their mother, and from and to those from whom she may inherit, or to whom she may transmit inheritance, as if born in lawful wedlock."

It is true that under English common law, illegitimate children were denied the right to inherit and that R.C. 2105.17 reflects the enlightened American view that such children should not necessarily be denied such rights under the intestacy laws. Nevertheless, we should not adopt the definition of "child" under the intestacy laws when the grantor so clearly and expressly defined the term "child" in the 1982 trust. Under the ordinary meaning of the language of that instru-

ment, plaintiff was not "born in wedlock" to the grantor and Deborah K. Niple because they were not officially married at the time of his birth. This is underscored by the substantially different definition of "child" in the grantor's 1987 trust expressly evidencing his intent to benefit plaintiff. Hence, one cannot conclude, as plaintiff asserts, that he was "born in wedlock" as a matter of law.

Plaintiff nevertheless makes the factual argument that he was "born in wedlock" because his mother and father had entered into common-law "wedlock" prior to his birth in 1987. Defendants argue that plaintiff did not present any competent evidence of this in the trial court.

Though prohibited in Ohio after the enactment of R.C. 3105.12 in 1991, common-law marriages were recognized in Ohio for many years. The Ohio Supreme Court stated the elements of such a marriage in *Nestor v. Nestor* (1984), 15 Ohio St.3d 143, 15 OBR 291, 472 N.E.2d 1091, as follows:

" 'An agreement of marriage *in praesenti* when made by parties competent to contract, accompanied and followed by cohabitation as husband and wife, they being so treated and reputed in the community and circle in which they move, establishes a valid marriage at common law * * *.' " *Id.* at 145, 15 OBR at 292, 472 N.E.2d at 1094, quoting *Umbenhower v. Labus* (1912), 85 Ohio St. 238, 97 N.E. 832, syllabus.

The *Nestor* court went on to say that all of the essential elements of a common-law marriage had to be established by clear and convincing evidence. *Id.* at 146, 15 OBR at 293, 472 N.E.2d at 1094. See, also, *State v. DePew* (1988), 38 Ohio St.3d 275, 279, 528 N.E.2d 542, 549 (evidence was insufficient to establish such a relationship where criminal defendant filed taxes and signed leases claiming marriage but otherwise referred to himself as single). Since defendants' motion for summary judgment identified a lack of proof on the issue of common-law marriage, it was incumbent on plaintiff to meet this burden.

Here, plaintiff submitted the affidavit of his mother, Deborah K. Niple. She averred that "prior to 1987" she and Robert A. Ruscilli intended, agreed and mutually considered themselves to be husband and wife and that they further made mutual promises of fidelity and support with the agreement that they were to live together as husband and wife forever. She then stated that she and Ruscilli openly cohabitated together prior to 1987 until the date of Ruscilli's death. She also said that prior to 1987 she and Ruscilli considered and conducted themselves as husband and wife and were considered as such by the community. She stated that for the benefit of others, she and Ruscilli renewed, ratified and reaffirmed their marriage commitment to each other on July 16, 1988 by public ceremony.

By contrast, defendants submitted the affidavit of Angela Ruscilli, the decedent's daughter from his first marriage, who stated that she had regular contact with her father throughout his life and lived in the central Ohio community with him. She denied that her father and Deborah K. Niple presented themselves to the community or their family as married prior to the birth of James R.L. Ruscilli and that she did not consider them as being married until their wedding ceremony took place on July 16, 1988.

Obviously, these affidavits conflict on the factual issue of whether a common-law marriage exists. On their face they pit the credibility of Deborah K. Niple against the credibility of Angela Ruscilli. Such a credibility issue is not properly resolved on summary judgment but is instead an issue to be determined at trial.[1] Notwithstanding, defendants maintain that Deborah K. Niple's affidavit should not be considered as evidence of a common-law marriage for several reasons. First, defendants claim that she was totally incompetent to give testimony on her marital reputation in the community. Essentially, defendants claim that it was impossible for her to have personal knowledge about such a fact and, therefore, it was incumbent on her to provide some third person or witness who was competent to testify on her behalf in this regard.

Civ.R. 56(E) requires affidavits to be made on personal knowledge by a competent person who sets forth facts that would be admissible in evidence. Evid.R. 803(18) provides an exception to the hearsay rule for reputation testimony concerning personal or family history, including a person's marital status. This rule does not contain any restriction on a person testifying about his or her *own* reputation. Defendants cannot cite any case for the proposition that a person is incompetent to testify about his or her own reputation. Though defendants state that this is an issue of lacking personal knowledge of what others think or intend, that is not true. Reputation testimony often hinges on what a relevant group of individuals collectively think about some person on some particular subject. It is based on what people have heard or what they know about a particular person's behavior in some regard. It is not impossible to know your own reputation any more than it is for someone else to know your reputation.

Defendants' argument then is that, since Deborah K. Niple was interested in the outcome of this case for her son, she should not be allowed to testify that she

---

1. Though defendants point out that Niple's affidavit does not clearly state when "prior to 1987" the common-law marriage occurred, we decline to speculate that it occurred at a time when it would be bigamous and thus void. There is an acceptable and plausible inference here that the marriage began after decedent was divorced. Thus, there is an issue of fact in this regard.

had a marriage. Defendants assert that she is fundamentally incompetent and biased. We disagree.

First, it is well established that witnesses are not barred from testifying today on account of interest, but instead these facts go to the weight of the witness's testimony. See Evid.R. 601 and 616. Second, we note that Ohio accepted the doctrine of common-law marriage in the past along with the pitfalls that go along with oral testimony concerning the marital relationship. Though some jurisdictions would not do this, but instead would only validate a "marriage in fact" where there was essential testimony from an eyewitness, see, 7 Wigmore, Evidence (Chadbourn Rev.1978) 553, Section 2082, we have found no case in Ohio subscribing to that view. Accordingly, we decline to retrospectively concoct such a bar to proving such relationships, as defendants wish us to do.

◼ Last, defendants assert that the trial court was correct to discredit Niple's affidavit because both she and Robert A. Ruscilli signed a marriage license application in Fairfield County which stated that he had "no wife living." Obviously this document was meant to comply with R.C. 3101.05, the marriage license statute, and R.C. 3101.01, which provides that a person having a "husband or wife living" may not marry another person. Though this document is made under oath and kept as an official record of marriage as defendants contend, we do not accept the argument that its language fundamentally contradicts Niple's asserted common-law marriage. First, the language in the application could be read or understood to ask whether the applicant had any *other* husband or wife. This would make sense because the licensing statutes do not sanction bigamous marriages. The application does not ask if there was a previous common-law marriage to the co-applicant. Further, if one were to accept defendants' construction of this license application, then anyone signing the document in a valid common-law marriage would be barred conclusively from claiming such a marriage. Such a rule would create a penalty in a way for ceremonializing the common-law marriage. We cannot subscribe to such a strange result. Hence, we find that there is at least a genuine issue of material fact as to whether Niple and Ruscilli intended to disclaim any prior common-law marriage to themselves by their signature on the application.

In sum, though plaintiff has not established that his subsequent legitimization by his father qualified him under the "born in wedlock" language of the 1982 insurance trust, there are genuine issues of material fact which remain in this case concerning whether he was born in common-law wedlock to Deborah K. Niple and Robert A. Ruscilli. Accordingly, the trial court erred in granting summary judgment to defendants.

Wherefore, plaintiff's assignments of error are sustained. The judgment of the trial court is reversed and the cause is remanded for further proceedings consistent with this opinion and in accordance with law.

*Judgment reversed*
*and cause remanded.*

PEGGY BRYANT, P.J., and STRAUSBAUGH, J., concur.

DEAN STRAUSBAUGH, J., retired, of the Tenth Appellate District, was assigned to active duty under authority of Section 6(C), Article IV, Ohio Constitution.