**Robert JENKINS, Respondent,**

v.

**REVOLUTION HELICOPTER CORP., INC., Appellant.**

**No. WD 50602.**

Missouri Court of Appeals, Western District.

June 18, 1996.

Motion for Rehearing and/or Transfer to Supreme Court Denied July 30, 1996.

Thomas E. Hankins, Gladstone, for appellant.

David P. Chamberlain, Liberty, for respondent.

Before ULRICH, P.J., and BRECKENRIDGE and EDWIN H. SMITH, JJ.

BRECKENRIDGE, Judge.

Robert Jenkins sued Revolution Helicopter Corporation, Inc., ("RHC") to recover money RHC allegedly owed him. RHC then filed a five-count counterclaim against Mr. Jenkins, alleging, *inter alia*, that Mr. Jenkins made slanderous statements about the company on two occasions, and that Mr. Jenkins' filing of his petition constituted an abuse of process. At the close of all the evidence the trial court entered a directed verdict in favor of Mr. Jenkins on the abuse of process claim. On

RHC's claim for slander which involved two submissions to the jury, the jury found in favor of RHC, assessed its actual damages at zero dollars, and found that RHC was entitled to punitive damages. Because the jury did not assess any actual damages, the trial court ordered that RHC "recover naught" on each of its submissions on its slander count.

RHC appeals, contending that the trial court erred: 1) in overruling its objection that the jury's verdicts on the slander claim were inconsistent; 2) in excluding evidence of RHC's good reputation; and 3) in directing a verdict in favor of Mr. Jenkins on RHC's abuse of process claim.

The judgment of the trial court is affirmed in part and reversed in part, and the case is remanded to the trial court.

On October 20, 1993, Mr. Jenkins filed an amended two-count petition against RHC. Mr. Jenkins had previously worked as a dealer for RHC, a company which manufactures helicopters. The first count sought to recover $6,000 Mr. Jenkins had paid to RHC as an advance for the delivery of helicopters and $3,000 he had deposited with RHC in accordance with a dealership agreement. The second count alleged that RHC owed Mr. Jenkins $26,990 for certain computer equipment it had purchased from him.

RHC filed a counterclaim which sought compensatory and punitive damages on five counts: Count I—trespass; Count II—defamation; Count III—tortious interference with contract; Count IV—prima facie tort; and Count V—abuse of process. RHC later voluntarily dismissed the fourth count.

The trial court sustained Mr. Jenkins' pre-trial motion to bifurcate the trial, leaving the amount of punitive damages to be determined in the trial's second phase. At the close of all the evidence, the trial court entered a directed verdict in favor of Mr. Jenkins on RHC's abuse of process claim.

On Mr. Jenkins' petition, the jury found in favor of Mr. Jenkins on count one and count two and awarded him damages of $10,486.73 and $29,825.03, respectively. On RHC's counterclaim, the jury found in favor of RHC on the trespass count, assessed its actual damages at $179 and found Mr. Jenkins liable for punitive damages. The jury found in favor of Mr. Jenkins on the tortious interference with contract claim.

The jury entered two separate verdicts on the defamation claim, Verdicts D and E. Verdict D concerned false statements Mr. Jenkins allegedly made about RHC at an air show in Florida. Verdict E pertained to statements Mr. Jenkins allegedly made over the telephone to Thomas Payne, a bank officer. On both Verdict D and Verdict E, the jury found in favor of RHC, assessed its actual damages at zero dollars, and stated that RHC was entitled to punitive damages.

After the verdicts were returned, the trial judge expressed to the parties his "concern" with Verdicts D and E. RHC's counsel objected to the verdicts on the basis that they were inconsistent, and he requested that the court give a clarifying instruction to the jury or, alternatively, grant a mistrial. The court overruled the objection and ordered that the jury be prohibited from awarding punitive damages on the two slander counts, leaving only the trespass count on which the jury could assess punitive damages.

The second phase of the trial then began, to determine the amount of punitive damages on the trespass count. After the parties offered evidence pertaining to Mr. Jenkins' financial background, the jury entered a verdict awarding RHC $10,000 in punitive damages.

The trial court entered judgment per the verdict on the trespass and the tortious interference counts, and the two counts of Mr. Jenkins' petition. For the two slander submissions, the court ruled that the jury's finding that RHC was entitled to punitive damages was a "nullity" and ordered that RHC "recover naught."

■ RHC's first point alleges that the trial court erred in overruling its objection that Verdicts D and E on the two slander submissions were inconsistent, because the jury instructions required the jury to find for RHC only if it determined that RHC had suffered damage to its reputation. The award of zero actual damages, RHC contends, is inconsistent with a finding in favor of RHC.

In construing the verdict, this court observes the general rules set out by the Missouri Supreme Court in *Morse v. Johnson,* 594 S.W.2d 610, 616 (Mo. banc 1980). Those rules are:

(1) That the verdict must be clear and unambiguous so that a judgment may be written upon it without resorting to inference or to construction; (2) that if from a consideration of the whole record the meaning of the jury can be made clear and the judgment is based upon what the jury actually found, it will be upheld; (3) that verdicts should be construed to give them effect if it can reasonably be done; (4) that the jury's intent is to be arrived at by regarding the verdict liberally and (5) although defective in form, if a verdict substantially finds the question in issue in such a way as will enable the court intelligently to pronounce judgment thereon for one or the other party it is sufficiently certain.

*Id.*

To determine whether the jury's verdicts on the slander counts were inconsistent, it is necessary to examine the relevant jury instructions. Instruction Number 22, MAI 23.10(1) modified, read:

In Verdict D on the claim of Defendant Revolution Helicopter Corporation, Inc. against Plaintiff for damages based on slander for statements made at the Florida Fun 'N Sun Air Show in 1993, your verdict must be for Defendant if you believe:

First, Plaintiff stated that

Defendant "is robbing you," or

Defendant "is fleecing you," or

Defendant "is ripping you off," or

the aircraft Defendant is selling will never be delivered, or

Plaintiff was cheated out of money and "you will be too," and

Second, Plaintiff was at fault in making one or more such statements, and

Third, such statement or statements tended to expose Defendant to contempt or ridicule, and

Fourth, such statement was heard by persons attending the 1993 Sun 'N Fun Airshow in Florida, and

Fifth, Defendant's reputation was thereby damaged.

Instruction 27, MAI 23.10(1) modified, read:

Your verdict must be in favor of Defendant Revolution Helicopter Corporation, Inc. for damages based on slander for statements made by Plaintiff Robert Jenkins in a telephone conversation with Tom Payne in late 1992, if you believe:

First, Plaintiff stated that Defendant's aircraft "would not break ground effect," or

Defendant "was not building any aircraft," or

the helicopters Defendant was manufacturing would never work, and

Second, Plaintiff was at fault in making one or more such statements, and

Third, such statement or statements tended to expose Defendant to contempt or ridicule, and

Fourth, such statements were heard by Tom Payne, and

Fifth, Defendant's reputation was thereby damaged.

Both instructions required the jury to find in favor of RHC only if it found that RHC's reputation was damaged. The instructions conform to the rule that recovery on a slander claim requires a showing of actual damages. *Nazeri v. Missouri Valley College,* 860 S.W.2d 303, 313 (Mo. banc 1993); MAI 23.10(1) [1980 New]. By finding in favor of RHC but assessing its damages at zero dollars, Verdicts D and E appear to be internally inconsistent.

The jury's determination in Verdicts D and E that Mr. Jenkins was liable for punitive damages does not ameliorate this discrepancy. The jury was directed in Instructions 23 and 28 that if it found in favor of RHC on the slander claims, it "must award Defendant such sum as [it] believe[s] will fairly and justly compensate Defendant. . . ." The jury could find Mr. Jenkins liable for punitive damages only if it believed his conduct "was outrageous because of Plaintiff's evil motive or reckless indifference to the rights of others." Instructions Number 24 and 29. Thus, the issue of actual damages was clearly separate from that of punitive damages. The

confusion in interpreting the jury's verdict centers on how the jury could have determined that RHC's "reputation was damaged" without finding that RHC suffered any actual damages.

In *Boone v. Richardson*, 388 S.W.2d 68 (Mo.App.1965), the southern district of this court faced a similar situation. The jury in a negligence suit returned a verdict in favor of the plaintiff but awarded her no damages. *Id.* at 70. The trial court granted the defendant's motion for a new trial on the issue of damages only, and the defendant appealed. *Id.* The appellate court held that the verdict was "so contradictory as to be a nullity," because it could not be construed with certainty. *Id.* at 76.

The *Boone* court reasoned that before there can be a finding of actionable negligence, there must be a finding that the plaintiff suffered damages. *Id.* Thus, a verdict for the plaintiff implies that the plaintiff suffered some damages. "[T]he jury's finding of the issues for the plaintiff flatly contradicts its finding that the plaintiff suffered no damages whatever." *Id.* Because the verdict could not "be fairly resolved into a definite finding for either party," the judgment of the trial court was reversed and the case was remanded to the trial court for a new trial on all issues. *Id.* at 76–77.

In *Haley v. Byers Transportation Company*, 394 S.W.2d 412, 416 (Mo.1965), the Supreme Court of Missouri recognized two lines of authority for resolving inconsistent verdicts. One, followed by *Boone*, 388 S.W.2d 68, and its progeny, *see e.g., Porter v. Mallet*, 596 S.W.2d 451, 452–53 (Mo.App.1980), *Pietrowski v. Mykins*, 498 S.W.2d 572, 579 (Mo. App.1973), holds that a verdict which is inconsistent is a nullity. The other, represented in *Haley* as being from "Federal Courts and some state jurisdictions," holds that a verdict for the plaintiff for zero damages is a verdict for the defendant. *Haley*, 394 S.W.2d at 416. The Missouri Supreme Court has not expressly adopted either approach. *Campbell v. Kelley*, 719 S.W.2d 769, 771 (Mo. banc 1986); *Cook v. Jones*, 887 S.W.2d 740, 741 n. 1 (Mo.App.1994); *White v. Otten*, 810 S.W.2d 704, 705 (Mo.App.1991).

This court finds the reasoning in *Boone*, 388 S.W.2d 68, persuasive. The jury's finding in favor of RHC on the two slander submissions required the finding that RHC suffered damage to its reputation. The assessment of zero damages unquestionably contradicts this determination. Because the verdicts cannot be fairly resolved into a definite finding for either party, they do not support the entry of judgment. *Robinson v. Riverside Concrete, Inc.*, 544 S.W.2d 865, 873 (Mo.App.1976); *Boone*, 388 S.W.2d at 76. RHC properly objected to Verdicts D and E before the jury was discharged, preserving the error for appeal. *Douglass v. Safire*, 712 S.W.2d 373, 374 (Mo. banc 1986). The trial court erred in not calling the jury's attention to the defect and returning the jury for further deliberations to correct its verdict or to render a new one. *Thorne v. Thorne*, 350 S.W.2d 754, 757–58 (Mo.1961). The portion of the trial court's judgment pertaining to the two slander submissions is reversed, and the cause is remanded to the trial court for a new trial on RHC's slander claim.

■ RHC's second point contends the trial court erred in excluding evidence relating to RHC's "good reputation." Because the issue may arise on retrial, this court will address the issues raised in the second point. That point reads:

The trial court erred in excluding evidence offered by RHC concerning its good reputation in the community because:

A. Such evidence is not only relevant in a slander case, it is essential;

B. Such evidence is relevant not only on the issue of Jenkins' liability, but it is relevant on the issue of RHC's damages.

The evidence RHC sought to introduce concerning its good reputation was based on the testimony of Dennis Fetters, the president of RHC. During Mr. Fetters' direct examination, he was asked whether RHC "enjoy[ed] a good reputation in the industry." The trial court sustained an objection to the question. Mr. Fetters was later asked if RHC enjoyed a good reputation in the "aircraft community." Mr. Jenkins' counsel objected on the ground that the witness could

not "testify about his own reputation," and the trial court sustained the objection.

RHC then made an offer of proof outside the presence of the jury. Mr. Fetters testified to the following matters concerning Mr. Jenkins' conversation with Mr. Payne, RHC's banker: 1) RHC's reputation in the business community was excellent prior to the time that Mr. Jenkins telephoned Mr. Payne; 2) the incident made it impossible for RHC to obtain financing from Mr. Payne's bank; 3) it affected RHC drastically; and 4) it negatively effected RHC's ability to borrow. Mr. Fetters also testified about Mr. Jenkins' conduct at the Florida air show, stating that: 1) it was extremely devastating to RHC's good reputation "not only [to] the public but to all the officials and magazine reports and editors worldwide;" 2) the incident devastated RHC's sales; and 3) it "almost ended" RHC's ability to raise money by sales for that year. At the conclusion of the offer of proof, the trial court emphasized that it was not excluding all evidence relating to RHC's reputation, noting there was "a lot of other stuff here that may very well be admissible in evidence." The court determined, however, that Mr. Fetters was "not permitted to offer his opinion without regard to foundation."

■ On appeal, RHC argues that evidence of its "good reputation" was relevant in that it helped establish a necessary element of a claim for slander: damage to its reputation. In the argument section following its second point, RHC contends the trial court erroneously excluded four exhibits, none of which appear in the record on appeal. When the appellant fails to make an exhibit a part of the record on appeal, the appellate court cannot determine the appropriateness of its admission or exclusion. *State v. Gannon*, 898 S.W.2d 141, 144 (Mo.App.1995). Mr. Fetters also testified to several matters in RHC's offer of proof which involve issues broader than those included in the second point. This court will focus on the propriety of the trial court's ruling which barred Mr. Fetters from offering testimony of RHC's "good reputation" in the community.

■ Defamation is "an unprivileged communication or publication of false and defamatory matter which injures the reputation of another." *Laun v. Union Electric Co. of Missouri*, 350 Mo. 572, 166 S.W.2d 1065, 1070 (1942). The essence of defamation is an invasion of the plaintiff's interest in reputation. *Jones v. Pinkerton's, Inc.*, 700 S.W.2d 456, 458 (Mo.App.1985). Although a corporation does not have a reputation in the same sense as an individual, it may bring a suit for defamation for damage to its reputation. *Cuba's United Ready Mix v. Bock Concrete*, 785 S.W.2d 649, 650 (Mo.App.1990); *Monroe v. Crandall*, 3 Conn.App. 214, 486 A.2d 657, 661 (1985). An essential element of a corporation's claim for slander is damage to its business reputation, and evidence concerning RHC's business reputation is relevant. *See Monroe*, 486 A.2d at 661.

The trial court did not prohibit Mr. Fetters' testimony on the basis that it was irrelevant. The court determined that Mr. Fetters was unable to offer an opinion about RHC's reputation because he was president of the corporation. The issue, then, is whether it is possible to testify to one's own reputation.

■ To resolve this issue, it is necessary to understand the nature of reputation testimony. Reputation is based on the opinion of the community as a whole, rather than the personal estimate of an individual. *Downing v. Downing*, 537 S.W.2d 840, 843 (Mo.App.1976); 5 J. Wigmore, Evidence, § 1612 at 584. Testifying about "reputation" requires having knowledge of how the community regards a particular individual or entity. Just as an individual may know the reputation of another, so may one know one's own reputation. *See Ruscilli v. Ruscilli*, 90 Ohio App.3d 753, 630 N.E.2d 745, 750 (1993) (because "reputation" concerns the viewpoint others hold of someone, "[i]t is not impossible to know your own reputation any more than it is for someone else to know your reputation."). Any question concerning the suitability of the president of a corporation testifying to the corporation's own reputation would go to the weight of the testimony rather than to its admissibility.

■ The trial court properly sustained an objection to Mr. Fetters' testimony concern-

ing RHC's reputation, however, because RHC failed to establish a sufficient foundation for the testimony. Before a witness may give reputation testimony, the witness' contact and the capacity and frequency of that contact with the relevant community must be firmly established. *DeLong v. Hilltop Lincoln–Mercury, Inc.*, 812 S.W.2d 834, 843 (Mo. App.1991). Here, RHC did not establish Mr. Fetters' contact with the community in which RHC allegedly enjoyed a good reputation. The trial court did not abuse its discretion in refusing to allow this testimony.

 RHC's third point alleges the trial court erred in entering a directed verdict in favor of Mr. Jenkins on RHC's abuse of process claim. RHC contends it made a submissible case by showing that Mr. Jenkins filed a replevin action against RHC to coerce it into returning certain goods, even though RHC had no legal obligation to do so.

 A motion for directed verdict should be granted if the evidence is so strongly against the plaintiff that there is no room for reasonable jurors to differ. *Waggoner v. Mercedes Benz of N. America*, 879 S.W.2d 692, 694 (Mo.App.1994). A submissible case is made only when "every fact essential for liability is predicated on legal and substantial evidence...." *Id.* When determining whether the plaintiff made a submissible case, this court views the evidence and reasonable inferences therefrom in the light most favorable to the plaintiff. *Shaffner v. Farmers Mut. Fire Ins. Co.*, 859 S.W.2d 902, 904 (Mo.App.1993).

On July 17, 1992, RHC and Mr. Jenkins signed a contract whereby Mr. Jenkins agreed to deliver certain computer equipment to RHC for $26,990. The purchase price was divided into six installments. The contract provided that if Mr. Jenkins did not receive payment for the computers within one year, he could demand full payment by RHC. RHC had ten days after receiving a written demand to pay the remaining balance.

Mr. Jenkins delivered and installed the computer equipment pursuant to the contract. On December 28, 1992, Mr. Jenkins filed a two-count petition against RHC which included a claim to replevy the computer equipment. On October 20, 1993, he filed an amended petition, replacing the replevin count with one seeking recovery of the purchase price of the computer equipment. RHC contends that the suit filed on December 28, 1992, constituted an abuse of process, because it sought repossession of the computers "seven months before any payment was due."

 To establish a claim for abuse of process, the plaintiff must show that: 1) the defendant "made an illegal, improper, perverted use of process"; 2) the defendant had an improper purpose in exercising the use of process; and 3) damage resulted. *Ritterbusch v. Holt*, 789 S.W.2d 491, 493 (Mo. banc 1990). The essence of a claim for abuse of process is the use of process for some collateral purpose. *Wells v. Orthwein*, 670 S.W.2d 529, 532 (Mo.App.1984). "If the action is confined to its regular and legitimate function in relation to the cause of action stated in the complaint there is no abuse even if the plaintiff had an ulterior motive in bringing the action, or if he knowingly brought suit upon an unfounded claim." *Id.* at 532. *See also R. Rowland & Co., Inc. v. Smith*, 698 S.W.2d 48, 51–52 (Mo.App.1985).

In *Ross v. Ford Motor Credit Co.*, 867 S.W.2d 546 (Mo.App.1993), cert. denied —— U.S. ——, 114 S.Ct. 2677, 129 L.Ed.2d 812 (1994), Tony and Juanita Ross brought a fifteen-count suit against Ford Motor Credit Company, including, *inter alia*, claims for conversion and abuse of process. The Rosses alleged that Ford Motor Credit had wrongfully obtained possession of their automobile by filing a suit for replevin and executing an invalid pre-trial order of delivery. The trial court directed a verdict in favor of Ford Motor Credit on the abuse of process claim. The jury then returned a verdict against Ford Motor Credit on the conversion claim, and this court affirmed, holding that it had no right to possession of the automobile. *Id.* at 555.

This court also held that the Rosses had failed to make a submissible case against Ford Motor Credit on their claim for abuse of process. *Id.* at 554. The court noted that there was "no evidence Ford Motor Credit had any motive for the institution of the

replevin suit other than to gain possession of the 1979 Mercury automobile." *Id.*

Here, RHC failed to present evidence that Mr. Jenkins had any purpose in filing the replevin suit other than to regain possession of the computer equipment. Indeed, RHC's argument on appeal is that Mr. Jenkins filed the replevin suit to force RHC to return the equipment before payment was due. Knowingly bringing suit upon an unfounded claim does not constitute an abuse of process. *Wells,* 670 S.W.2d at 532. RHC's failure to present any evidence to establish a collateral purpose entitles Mr. Jenkins to a directed verdict. *Ross,* 867 S.W.2d at 554. RHC's third point is denied.

Although the transcript reveals that the trial court granted Mr. Jenkins' motion for a directed verdict on RHC's abuse of process claim, the judgment erroneously states that the motion was "denied." The court's determination that Mr. Jenkins was entitled to a directed verdict on the abuse of process claim is affirmed, but the cause is remanded to allow the trial court to enter an order *nunc pro tunc* to reflect that the motion for a directed verdict on the abuse of process claim was granted.

The trial court's judgment is affirmed in part and reversed in part, and the cause is remanded to the trial court for further proceedings consistent with this opinion.

All concur.